528 So.2d 633 (1988)
SHREVEPORT GREAT EMPIRE BROADCASTING, INC. d/b/a Radio Station KWKH, Plaintiff-Appellee,
v.
Dr. Jon K. CHICOINE, D/B/A Chicoine Clinic, Defendant-Appellant.
No. 19572-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
Graves, Daye, Bowie, Beresko & Flowers by David P. Daye, Shreveport, for defendant-appellant.
Cady & Thompson by Tom N. Thompson, Shreveport, for plaintiff-appellee.
Before HALL, MARVIN and LINDSAY, JJ.
LINDSAY, Judge.
The defendant, Dr. Jon K. Chicoine, d/b/a Chicoine Clinic, has appealed a Shreveport City Court judgment ordering him to pay the plaintiff, Shreveport Great Empire Broadcasting Inc., d/b/a KWKH *634 Radio Station, $3,314.70 for radio advertising, together with eighteen percent interest from June 10, 1986 until paid, and an attorney fee of twenty-five percent. For the following reasons, we affirm the trial court judgment.

FACTS
The plaintiff, KWKH Radio, ran an advertising campaign in late 1985 and early 1986 known as the Community Club Awards (CCA) program. Under this program, certain area businesses agreed to serve as sponsors of the program and signed contracts for radio advertising in conjunction with the campaign. Local civic groups also participated in the program by patronizing the sponsor businesses through various activities, such as making purchases or attending open houses. For this patronage of the sponsors, the clubs would receive "points." The civic clubs could earn "bonus points" by inviting representatives from the sponsor businesses to speak at their group meetings. The speakers hoped to enhance their business through personal appearances at these civic clubs. At the end of a thirteen week period, the civic clubs with the most "points" would receive a cash prize from the radio station.
A sales representative of KWKH, Edward Metoyer a/k/a Mike Mitchell, approached the defendant, a chiropractor who was fairly new to the Shreveport area, regarding participation as a sponsor in the CCA campaign. The defendant was represented by the advertising agency of Galloway, Hudson and Shaw. Cindy Kimball, an employee of Galloway, Hudson & Shaw, was the defendant's account executive. Dr. Chicoine, Metoyer, and Kimball met with Linda Fruge, an employee of KWKH who was in charge of the CCA campaign. The defendant agreed to participate in the CCA Program. On November 12, 1985, the defendant signed an advertising contract with the plaintiff for $3,225, plus interest, in exchange for radio advertising. The plaintiff also signed an "addenda" to the contract in which he was to participate in the CCA sales promotion campaign. Neither document contained an agreement regarding speaking engagements.
The plaintiff ran radio advertisements for the defendant as required by the written contract. Several speaking engagements for the defendant to speak to civic clubs were also arranged. The defendant failed to pay for the radio advertising he received and on November 24, 1986, the plaintiff filed suit in Shreveport City Court to recover $3,314.70, together with eighteen percent interest and an attorney fee of twenty-five percent.
The defendant answered, claiming the plaintiff verbally promised and guaranteed that the defendant would be invited to make personal appearances and speak at civic clubs at least three times per week for the thirteen week duration of the CCA campaign. The defendant claimed this was the primary consideration for signing the written contract and the plaintiff failed to fulfill this part of the obligation. The defendant claimed that only fourteen speaking engagements were provided. The defendant argued that because the plaintiff did not completely fulfill the verbal agreement regarding speaking engagements, the amount owed by the defendant to the plaintiff should be reduced under the theory of quanti minoris.
At trial, the defendant admitted signing the advertising contract, but he said he did not read the contract. The defendant claimed he relied upon Kimball, his advertising agent, to be sure that all the terms of the agreement between the parties were included in the contract. Kimball testified that she never read the contract either, but relied upon the word of a co-employee, the media buyer for the advertising agency, that the contract was a standard advertising contract. Kimball also said she relied upon Metoyer's word that the speaking engagements were included in the contract.
Metoyer and other employees of KWKH testified that speaking engagements were discussed with the defendant, but no promises or guarantees were made to the defendant as to the number of speaking engagements which would be provided.
The trial court found in favor of the plaintiff and ordered the defendant to pay *635 $3,314.70 (which included an accrued finance charge), plus eighteen percent interest from June 10, 1986, together with an attorney fee of twenty-five percent of the principal and interest.
In a written opinion, the city court found that even though the defendant claimed that he entered into the contract in order to obtain speaking engagements, the defendant failed to prove that this was a part of the agreement between the plaintiff and defendant. Therefore, the defendant could not avoid his obligation under the contract on this ground.
The defendant appealed the trial court decision urging numerous assignments of error. The defendant's assignments of error are unclear. However, we perceive the essence of the defendant's arguments to be that the trial court erred in failing to find that the speaking engagements were the principal cause for entering into the contract, and that the plaintiff's verbal promise to provide a specific number of speaking engagements modified the ambiguous written contract. The defendant also argues that because the plaintiff only partially performed the obligation to provide speaking engagements, the amount he is bound to pay the plaintiff should be reduced.

DISCUSSION
The defendant contends that the plaintiff made a verbal promise to provide the defendant with thirty-nine speaking engagements and that this obligation was implicitly included in the ambiguous written contract between the parties. This argument is meritless.
Parol evidence is generally not admissible to vary or contradict the clear and unambiguous terms of an authentic act or written instrument. However, in the interest of justice, parol evidence may be admitted to prove such circumstances as a vice of consent. LSA-C.C. Art. 1848. It has long been recognized jurisprudentially that parol evidence is admissible to show the true cause or consideration for a contract, although the true consideration may be different from that actually recited in the written contract. Smith v. Southern Craft Corporation, 202 La. 1019, 13 So.2d 335 (1943); Love v. Dedon, 239 La. 109, 118 So.2d 122 (1960). Parol evidence is also admissible, between the parties to a written act, to prove want or failure of consideration. Scafidi v. Johnson, 420 So.2d 1113 (La.1982); Gulf States Finance Corporation v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36 (1965).
The defendant argues that the written contract concerning participation in the CCA campaign was vague and ambiguous and that the ambiguity should be construed against the plaintiff who drew the contract in order to find that an agreement concerning speaking engagements was included in the contract. The written contract does not reflect an agreement regarding speaking engagements. Further, upon examination of the written contract and particularly the addenda thereto, we find that the agreement is indeed vague regarding how plaintiff was to participate in the CCA campaign. Due to the vagueness of the contract, coupled with the allegation that there was a failure of cause, parol evidence was admissible to explain the agreement contemplated by the parties.
A party who demands performance of an obligation must prove the existence of the obligation. A party who asserts that an obligation is null or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction. LSA-C.C. Art. 1831.
A valid obligation requires, among other factors, consent. Consent may be vitiated by error, fraud, or duress. LSA-C.C. Art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. LSA-C.C. Art. 1949. Error as to a subsidiary motive has no effect on the validity of the contract. Marcello v. Bussiere, 284 So.2d 892 (La.1973); Greater East Baton Rouge KOA, Inc. v. Lamar Corporation, 481 So. 2d 654 (La.App. 1st Cir.1985); Dunham v. Dunham, 467 So.2d 555 (La.App. 1st Cir. *636 1985), writ denied 469 So.2d 989, 990 (La. 1985).
Cause is the reason why a person obligates himself. A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. LSA-C.C. Art. 1967. Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object, or any other circumstance that the parties regarded, or should have in good faith regarded, as a cause of the obligation. LSA-C.C. Art. 1950.
A contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract where the other party knew or should have known it was the principal cause. Scoggin v. Bagley, 368 So.2d 763 (La.App. 2d Cir. 1970); Hoffman v. Craftworld International, Inc. 463 So.2d 89 (La.App. 3rd Cir. 1985); Savoie v. Bills, 317 So.2d 249 (La. App. 3rd Cir.1975), writ dismissed 320 So. 2d 554 (La.1975).
In order for the defense of error to prevail, the party claiming it must prove a motive for the obligation, error as to the motive, and that the other party knew or should have known of the motive. Ouachita Equipment Rental Company v. Tommy Trainer, 408 So.2d 930 (La.App. 2d Cir.1981); Greater East Baton Rouge KOA, Inc. v. Lamar Corporation, Inc., supra.
The question of whether the evidence offered by a party corroborates his claim is a finding to be made by the trier of fact and that finding is not subject to reversal unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand 370 So.2d 1262, writ denied 374 So.2d 660 (La.1979); Canter v. Koehring, 283 So.2d 716 (La.1973); O'Rourke v. Tracy, 375 So.2d 747 (La.App. 4th Cir.1979).
The defendant concedes that the written contract between himself and the plaintiff for radio advertising contained no mention of the speaking engagements which he claims formed the principal cause for entering into this contract. Rather, he claims that speaking engagements were discussed during the contract negotiations and that the plaintiff's verbal promise of thirty-nine speaking engagements was the cause for entering into the written contract for radio advertising.
In essence, the trial court found that the defendant failed to carry his burden of proving that there was a promise of a specific number of speaking engagements and therefore the defendant failed to prove that there had been a failure of cause. This finding of fact is not clearly wrong.
At trial, it was established that speaking engagements were discussed in the contract negotiations. The plaintiff's witnesses categorically denied that any promise was made or guarantee given for a set number of speaking engagements. In contrast, the defendant did not prove that the plaintiff made any specific promises to provide a set number of speaking engagements, nor did he show that the plaintiff knew or should have known that the defendant considered a specific number of speaking engagements to be the reason why he agreed to the contract. The evidence further shows that the plaintiff did provide the defendant with some speaking engagements but that the plaintiff did not accept all engagements offered nor did he appear for all engagements accepted. Therefore, we find, as did the trial court, that the defendant failed to carry his burden of proving that there was error as to the principal cause for making the written contract.
In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation. Yet, if the doubt arises from lack of a necessary explanation that one party should have given, or from negligence or fault of one party, the contract must be interpreted in a manner favorable to the other party, whether obligee or obligor. LSA-C.C. Art. 2057.
As stated before, no provisions of the addenda can be interpreted to include in the agreement between the parties an obligation *637 by the plaintiff to provide the defendant with a specific number of speaking engagements. If the defendant required that such a provision be included in this agreement, he was bound to make his wishes known to the plaintiff and to be sure that the provision was included in the agreement.
At trial, the defendant testified that he did not read the written contract before he signed it but rather relied upon the representations of his advertising agent that the contract encompassed the entire agreement of the parties. The advertising agent, Cindy Kimball, testified that she also failed to read the contract but relied upon the representations of the plaintiff's agent, Metoyer, and the advertising agent's media buyer, that the speaking engagements were included in the contract.
The fact that the defendant failed to read the contract is not a defense. It is well settled that the person who signed the written contract is presumed to know its content, whether he actually read it or not. Signatures to contracts are not mere ornaments. Williams Engineering, Inc. v. Goodyear, 480 So.2d 772 (La.App. 5th Cir. 1985), writ granted 488 So.2d 190, affirmed 496 So.2d 1012 (La.1986); Heyl v. Heyl, 445 So.2d 88 (La.App.2d Cir.1984), writ denied 446 So.2d 1228 (La.1984); Jackson v. Lambert, 492 So.2d 498 (La.App. 1st Cir.1986), writ denied 496 So.2d 1045, 1046 (La.1986); Magri v. Lee, 470 So.2d 910 (La.App. 5th Cir.1985); Tweedel v. Brasseaux, 433 So.2d 133 (La.1983). Therefore, because the defendant failed to adequately express his wishes and failed to have them included in the agreement, the written agreement must be construed against him. LSA-C.C. Art. 2057.
Agreements legally entered into have the effect of law upon the parties thereto. Snedegar v. Noel Estate, Inc., 438 So.2d 677 (La.App. 2d Cir.1983), writ denied 442 So.2d 459 (La.1983). An examination of the contract between the plaintiff and the defendant and the addenda to the contract clearly shows that the defendant agreed to pay $3,225 plus interest, for radio advertising to be provided by the plaintiff. The plaintiff proved that it provided this radio advertising for the defendant. The defendant failed to carry his burden of proving any other agreements between the parties. Therefore, the defendant is obligated to pay the amount for which he contractually obligated himself.

QUANTI MINORIS
The defendant argues that because the plaintiff failed to provide him with thirty-nine speaking engagements but provided only fourteen or fifteen such engagements, the amount the defendant owes to the plaintiff should be reduced under the theory of quanti minoris. However, because we find that no such agreement existed between the plaintiff and the defendant, consideration of this argument is unnecessary.

CONCLUSION
For the above stated reasons, the judgment of the trial court is affirmed. All costs in this court and in the court below are taxed to the defendant.
AFFIRMED.