794 So.2d 52 (2001)
Carolyn ALFORD, Plaintiff-Appellant,
v.
AL COPELAND INVESTMENTS, INC., Defendant-Appellee.
No. 34,808-CA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2001.
*53 Allan R. Harris, Shreveport, Counsel for Appellant.
Mayer, Smith & Roberts by Frank Carroll, Shreveport, Counsel for Appellee.
Before STEWART, GASKINS and DREW, JJ.
DREW, J.
After the plaintiff, Carolyn Alford, sustained a dental injury from eating food containing a small pebble, she later signed a release and cashed the accompanying check for $89.00. The question on appeal is whether the trial court erred in granting defendant's exception of res judicata based on Alford's signing the release and cashing the check. For the reasons set forth below, we affirm the trial court's judgment.

FACTS
In October 1998, Alford broke a tooth while eating red beans and rice containing a small pebble that she had purchased from a Popeye's Fried Chicken Restaurant in Shreveport, Louisiana. The broken tooth was extracted in January 1999, and the dentist's charges for the extraction totaled $89.00. Alford would subsequently sign a "Release and Settlement of Claim" presented to her by a representative of defendant, and would simultaneously accept and later cash a check dated 1/29/99 in the amount of $89.00. The "Release and Settlement of Claim" stated that for the sole consideration of $89.00 Alford released and forever discharged Popeye's/Diversified Foods and Seasonings and "its insurers and all other persons, firms and corporations from all claims and demands, rights and cause of action of any kind" that she had or thereafter might have on account of the incident at issue. The document had the following words prominently printed in capital letters immediately *54 above the signature line upon which Alford signed:
YOU ARE MAKING A FINAL SETTLEMENT THIS IS A RELEASE: READ BEFORE SIGNING.
Likewise, the $89.00 check contained the following words immediately underneath Ms. Alford's name as payee: "In full settlement of claims related to dental injury of October 1998."
On October 25, 1999, Alford filed suit against Al Copeland Investments, Inc., alleged by Alford to have supplied the red beans and rice to Popeye's. Alford's petition was answered by Copeland's of New Orleans, Inc., which stated that it was erroneously designated as Al Copeland's Investments, Inc. in Alford's petition. The answer generally denied the allegations of Alford's petition, and Copeland's subsequently filed a peremptory exception of res judicata based on Alford's actions of executing the release and cashing the check.[1]
At her deposition, Alford testified that after the incident an accident report was filled out, and she was told to contact "the main office." She stated she was given the "run around" when she tried to contact the main office, but that she eventually received a call from a dentist's office telling her that the dentist had been authorized to treat her for her injury. Although the cost of extracting the broken tooth was $89.00, Alford testified that because the extracted tooth had supported a bridge, she would need another bridge at a cost of approximately $900.00.
With respect to the events surrounding the execution of the release and the acceptance of the check, Alford testified at her deposition that she remembered signing a document that looked like the release, but that she was full of medication and "wasn't paying any attention to nothing. I didn't have my reading glasses." She stated that she had to sign the release in order to get the check, and that the representative of defendant did not indicate that she was fully settling her claim. At her deposition, Alford was not wearing her glasses, but she could read the bold print stating that the document was a final settlement and was a release that should be read before signing. With respect to the language on the check, she stated that at the time she received the check she was still "kind of hyper" from the medicine she had been taking and that she was not wearing her glasses, but she admitted that she did not take the check directly to the bank, and that after she returned home she read the language on the check concerning full settlement. Although she asserted that she tried to return the check and that her attempted return was refused, she admitted that the following day she cashed the check. Nevertheless, she insisted that she never intended to settle her claim for only $89.00. She indicated that after she had cashed the check, she had continued to call Copeland's and "they kept refusing," eventually telling her to get a lawyer, which she then did.

DISCUSSION
On appeal, Alford asserts the following factors in support of her position that she *55 did not intend to settle the claim for $89.00:
1. The $89.00 paid was the exact amount of the bill for pulling the damaged tooth.
2. The amount of the release was extremely small in view of the nature and extent of the injury.
3. The claim for personal injuries was still being negotiated as late as March 8, 1999, by Alford's attorney.
4. The personal representative of the defendant contacted Alford, knowing that she was represented by counsel, and obtained an undated release from her. The release also fails to state the date of the injury. There is no evidence offered by the defendant as to any endorsement of the check in question or when it was tendered for payment.
5. Alford testified at her deposition that it was never her intent to settle her substantial personal injury losses for a mere $89.00 and that the money was being used to either pay the dental bill for the extraction or for medication ordered by the dentist.
Before proceeding to discuss the law as applied to the facts of this case, we note that the appellate record does not support Alford's allegation on appeal that a personal representative of the defendant contacted her despite knowing she was represented by counsel. Instead, Alford's own deposition testimony revealed she did not obtain a lawyer until after she had already signed the release and cashed the check. Furthermore, while Alford asserts that the release fails to state the date of the injury, the release does state that the injury occurred in October 1998. Alford cannot reasonably argue that the release does not refer to the incident at issue. Additionally, there can be no serious argument with respect to endorsement of the check because Alford admits that she cashed the check. Finally, we note that while Alford asserts that her claim for personal injury was still being negotiated by her attorney in March 1999, this assertion is of little or no significance in light of the fact that Alford admitted signing the release and cashing the check before contacting an attorney.
The provisions of article 3071 of the Louisiana Civil Code state in pertinent part that a transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. Article 3071 further states that such a contract must be either reduced to writing or recited in open court and capable of being transcribed from the record of the proceeding.
Moreover, under the provisions of La. C.C. art. 3078, transactions have, between the interested parties, a force equal to the authority of things adjudged. They cannot be attacked on account of any error in law or any lesion, but an error in calculation is correctable. A transaction also may be rescinded whenever there exists an error in the person or on the matter in dispute, or where there is fraud or violence. La. C.C. art. 3079. Because the transaction or compromise has the legal efficacy of a judgment, possessing a force equal to the authority of things adjudged, a valid compromise can form the basis of a plea of res judicata. Nelams v. Allen's T.V. Cable, 95-444 (La.App.3rd Cir.11/2/95), 664 So.2d 563. Thus, the agreement at issue herein properly formed the basis of defendant's exception of res judicata.
*56 The law strongly favors compromise agreements between parties, and the law will not invalidate such settlements absent a strong showing that they violate good morals or the public interest because of error, bad faith, or fraud. Hoover v. Boucvalt, 99-0867 (La.App.4th Cir.11/24/99), 747 So.2d 1227, writ denied, XXXX-XXXX (La.2/18/00), 754 So.2d 969.
In this case, Alford claims that error existed in the release, but the record supports the trial court's conclusion. Alford's self-serving assertions are supported only by the fact that the $89.00 payment appears small in view of the possible extent of her injury. Furthermore, as noted above, lesion is not a basis for attacking a transaction.
In this case, Alford signed a transaction which clearly stated that she was making a final settlement and which plainly warned that it was a release which she should read before signing. She could read these warnings without her glasses, and yet she proceeded, by her own admission, to sign the agreement. Furthermore, even after she returned home and read the language on the check which also stated that it was in full settlement of her claims, she proceeded to cash the check and spend the money. She did not contact an attorney until after taking these actions, and these actions strongly support the trial court's sustaining of the exception of res judicata.
Finally, although the evidence before the court herein consisted solely of records and depositions, the manifest error standard of appellate review nevertheless applies. See Shepard on behalf of Shepard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308; and Williams v. Jackson Parish Hospital, 31,492 (La.App.2d Cir.1/13/99), 729 So.2d 620, writ denied, 99-0458 (La.4/1/99), 742 So.2d 558. Without question, the record herein will not support a finding of manifest error on the part of the trial court.

DECREE
For the reasons set forth above, the trial court's judgment sustaining the exception of res judicata is AFFIRMED at appellant's costs.
NOTES
[1] Although the defendant herein is Copeland's, the "Release and Settlement of Claim" stated that it is a release and discharge not only for Popeye's but also:

its insurers and all other persons, firms and corporations from all claims and demands, rights and cause of action of any kind the undersigned now has or hereafter may have on account of or in any way growing out of Personal Injuries existing or which may exist which are known or unknown to me at the present time and Property Damage resulting or to result from an occurrence which happened on or about October 1998....