WILLIAMS, J.
| plaintiffs, Brandy Hines and Raymond Hines, appeal a district court’s ruling sustaining an exception of res judicata urged by defendant, Melissa Ann Smith, M.D.,[1] and her insurer, Louisiana Medical Mutual Insurance Company, (“LAMMICO”). For the reasons set forth herein, we reverse the district court’s ruling and remand this matter for further proceedings.
FACTS
On January 14, 2006, the plaintiff, Brandy Hines, was treated for abdominal pain in the emergency room at St. Francis Medical Center (“St. Francis”) in Monroe, Louisiana. Mrs. Hines was examined and treated by defendant, Dr. Smith, an emergency room physician on duty.[2] Mrs. Hines was released from the emergency room, but returned on February 20, 2006, complaining of severe abdominal pain. It was determined that Mrs. Hines was experiencing an ectopic pregnancy and that one of her fallopian tubes had ruptured. She underwent emergency surgery and was hospitalized for a lengthy period of time.
Sometime after Mrs. Hines was released from the hospital, she and her husband were contacted by a representative of St. Francis to discuss a possible settlement of any potential claims against the hospital. On May 17, 2006, plaintiffs executed a “Settlement Agreement and Receipt and Release,” in which they settled “any and all claims and demands made by them and/or rights and causes of action arising out of the January 14, 2006 |2visit to St. Francis Emei’gency Room ...” for the sum of $33,000. Dr. Smith was not involved in the settlement negotiations. At that time, plaintiffs were unrepresented by legal counsel; however, according to plaintiffs, l’epresentatives of the hospital advised them to consider filing a lawsuit against Dr. Smith.
On Api’il 24, 2008, plaintiffs filed a medical malpractice action, naming Dr. Smith and LAMMICO as defendants. Plaintiffs alleged that Dr. Smith failed to perform a pregnancy test which would have revealed that Mi’s. Hines was experiencing an ectopic pregnancy. Plaintiffs further alleged that Dr. Smith breached the appropriate standard of care for an emergency medicine physician in her evaluation of Mrs. Hines.
Subsequently, defendants learned of the settlement agreement between plaintiffs and St. Francis. On September 11, 2008, defendants filed an exception of res judica-ta, contending the language of the settlement agreement served to bar any claims against defendants. The district court sustained the exception, stating:
[T]he court is relying upon the Alford [v.] Al Copeland Investments case and that language. The court has read the release. The court finds that the language in the release which provides that all persons were to be released from any claims arising out of this claim of ectopic pregnancy and its consequences. The *1237 language is broad enough to cover this situation we’ve got here. I also find that when rights are being reserved against a party or a possible party under these circumstances, that reservation must be expressed and in writing in order for it to be preserved. And accordingly, I find that the exception of res judicata should be and it is granted.
This appeal followed.
| ¿DISCUSSION
Plaintiffs contend the district court erred in sustaining the defendants’ exception of res judicata. Plaintiffs argue that they did not intend to release Dr. Smith from liability in their settlement with St. Francis. Plaintiffs further argue that the district court erred in ruling that plaintiffs were required to expressly reserve their rights to bring a claim against Dr. Smith.
The essential elements of res judicata are found in LSA-R.S. 13:4231, which provides, in pertinent part:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
[[Image here]]
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
A valid compromise can form the basis of a plea of res judicata. Ortego v. State, Dep’t of Transp. & Dev., 96-1322 (La.2/25/97), 689 So.2d 1358; Marsh v. US-Agencies Cas. Ins. Co., 42,176 (La.App. 2d Cir.5/16/07), 957 So.2d 901, writ denied, 2007-1286 (La.10/26/07), 966 So.2d 575. The purpose of the doctrine of res judicata is to promote judicial efficiency and the final resolution of disputes. Avenue Plaza, L.L.C. v. Falgoust, 96-0173 (La.7/2/96), 676 So.2d 1077; Hawthorne v. Couch, 41,603 (La.App. 2d Cir.12/20/06), 946 So.2d 288, writ not considered, 2007-0173 (La.3/16/07), 952 So.2d 685. The doctrine of res judicata is stricti juris, and any doubt concerning application of the principle of res judicata must be resolved against its application. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210; Hawthorne, supra.
The party who urges the exception of res judicata bears the burden of proving its essential elements by a preponderance of the evidence. If there is any doubt as to its applicability, the exception must be overruled. Davis v. Home Depot, 96-850 (La.App. 5th Cir.2/22/97), 690 So.2d 208, writ denied, 97-0728 (La.5/1/97), 693 So.2d 740, citing State, Dept. of Social Services v. Matthews, 615 So.2d 1112 (La.App. 5th Cir.1993). The standard of review of a ruling sustaining an exception of res judicata is manifest error when the exception is raised prior to the case being submitted and evidence is received from both parties. State ex rel. Murphy v. Haren, 42,098 (La.App. 2d Cir.5/16/07), 957 So.2d 869, writ denied, 2007-1285 (La.9/21/07), 964 So.2d 345; Floyd v. City of Bossier City, 38,187 (La.App. 2d Cir.3/5/04), 867 So.2d 993.
The purpose of a compromise is to prevent or put an end to litigation. The essential elements of a compromise are: (1) mutual intention of putting an end to the litigation and (2) reciprocal concessions of the parties in adjustment of their differ *1238 ences. Rivett v. State Farm Fire & Cas. Co., 508 So.2d 1356 (La.1987); Thompson v. Jackson Parish Police Jury, 36,497 (La.App. 2d Cir.10/23/02), 830 So.2d 505.
In the instant case, Mr. and Mrs. Hines executed a document entitled “Settlement Agreement and Receipt and Release” in which they | acknowledged that they had received the sum of $33,000 from St. Francis “all in full, final, complete and absolute satisfaction of any and all claims and demands made by them and/or rights and causes of action arising out of the January 14, 2006 visit to St. Francis Emergency Room, including the surgical procedure performed on February 20, 2006 and all causes of action arising out of or related to the ectopic pregnancy.” The lengthy agreement further provided:
Appearers, BRANDY NICOLE HINES AND RAYMOND EARL HINES, JR. further declare and acknowledge that, for and in consideration of the above described payments, they ... have forever released, acquitted and discharged ... ST. FRANCIS MEDICAL CENTER, INC., and its agents, servants, employees, partners, officers, members, directors, successors, heirs, administrators, executors and assigns, parent and subsidiary corporations, and any and all other persons, firms, corporations, partnerships and associations, whether or not herein specifically named, of and from any and all claims, actions, causes of actions, rights, demands and damages, whether same be ex contractu or ex delicto, for ... any claim of any nature, character or kind;
which Appearers ... now have or which they did at any time have, which may hereafter accrue, arising from or on account of or in any way growing out of or connected with or resulting from, or which may hereafter result from that certain accident, casualty or event, which occurred on or about [the] January 14, 2006 visit to St. Francis Emergency Room, including the surgical procedure performed on February 20, 2006 and all causes of action aidsing out of or related to the ectopic pregnancy. It is understood and agreed by Appearers ... the settlement above described and for which this Settlement Agreement and Receipt and Release given, has been and is being made in the settlement and compromise of doubtful and disputed claims; that the claims of Appearers, including the claims and demands made by them in regard to and/or arising out of that certain accident, casualty or event, which occurred on or about [the] January 14, 2006 visit to St. Francis 1 (¡Emergency Room, including the surgical procedure performed on February 20, 2006 and all causes of action arising out of or related to the ectopic pregnancy, have been denied and disputed and are now being denied and disputed by the party hereby released ....
(Emphasis added).
Plaintiffs contend the language of the settlement agreement released St. Francis and its employees, but did not expressly release Dr. Smith from liability. Plaintiffs also argue that the testimony of Mr. Hines proved that they did not intend to release Dr. Smith when they executed the agreement.
Based on the language of LSA-R.S. 13:4231, our courts have established that the following five elements must be satisfied for a finding that an action is precluded by res judicata: “(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that *1239 was the subject matter of the first litigation.” Chevron U.S.A., Inc. v. State, 2007-2469 (La.9/8/08), 993 So.2d 187, 194 quoting, Burguieres v. Pollingue, 2002-1385 (La.2/25/03), 843 So.2d 1049, 1053.
A release executed in exchange for consideration is a compromise. Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741. LSA-C.C. art. 3071 defines a compromise as “an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers in the hope of gaining, balanced by the [7danger of losing.” See also, Dumas v. Angus Chemical Co., 31,969 (La.App. 2d Cir.8/20/99), 742 So.2d 655.
A compromise regulates only the differences which appear clearly to be comprehended therein by the intention of the parties, “whether it be explained in a general or particular manner,” and does not extend to differences which the parties never intended to include. LSA-C.C. art. 3073; Ortego, supra. Further, a general release will not necessarily bar recovery for those aspects of the claim not intended to be covered by the release. Dimitri v. Dimitri, 2000-2641 (La.App. 4th Cir.6/30/02), 809 So.2d 481, citing Moak v. American Auto. Ins. Co., 242 La. 160, 134 So.2d 911 (La.1961).
A party claiming res judicata based on a compromise agreement must have been a party to the compromise. Rodriguez v. Louisiana Tank, Inc., 94-0200 (La.App. 1st Cir.6/23/95), 657 So.2d 1363, writ denied, 95-2268 (La.11/27/95), 663 So.2d 739. Persons who were not parties to a compromise by other interested parties were not bound thereby and could not take any advantage flowing from it. Sartor v. Southern Carbon Co., 61 F.Supp. 649 (W.D.La.1945).
In OHego, supra, the Supreme Court stated:
The Civil Code postulates transaction or compromise as a mutual agreement between two or more persons for the benefit of preventing or terminating a lawsuit in the manner in which they agree and in the balance of reciprocal concessions. Consequently, a party claiming res judi-cata based on a compromise agreement must have been a party to the compromise, and the authority of the thing adjudged extends only to the matters those parties intended to settle.
1¾⅞ at 1363 (Emphasis added; internal citations and footnote omitted).
In the instant case, the following facts are not in dispute: the compromise was valid and final; the cause of action asserted in the lawsuit against Dr. Smith existed at the time of plaintiffs’ compromise with St. Francis; and the cause of action asserted in the suit against Dr. Smith arose out of the same transaction or occurrence that was the subject of the compromise.
However, the question in dispute is whether St. Francis and Dr. Smith may be considered the “same parties” for purposes of satisfying the requirements of res judi-cata. Defendants have not disputed the fact that Dr. Smith was not a named party to the settlement agreement. Rather, defendants argue that in executing the settlement agreement, plaintiffs contractually agreed to release “any and all other persons ... whether or not herein specifically named, of and from any and all claims, actions, causes of actions, rights, demands and damages ...” arising out of Mrs. Hines’ emergency room visit and subsequent surgery and treatment at St. Francis.
*1240 In its ruling sustaining the exception of res judicata, the district court relied upon this court’s decision in Alford v. Al Copeland Investments, Inc., 34,808 (La.App. 2d Cir.6/20/01), 794 So.2d 52. In Alford, the plaintiff broke a tooth while eating red beans and rice she had purchased from a Popeye’s Fried Chicken Restaurant. The plaintiff underwent a tooth extraction which cost $89. Popeye’s/Diversified Foods and Seasonings offered the plaintiff a check in the amount of $89, which the plaintiff accepted and cashed. The plaintiff signed a “Release and Settlement of IflCIaim,” which stated that for the sole consideration of $89, the plaintiff released and forever discharged Popeye’s/Diversified Foods and Seasonings and “all other persons, firms and corporations from all claims and demands, rights and cause of action of any kind” arising out of the incident. The document also contained the following language directly above the signature line:
YOU ARE MAKING A FINAL SETTLEMENT THIS IS A RELEASE: READ BEFORE SIGNING
The plaintiff filed suit against Al Copeland Investments, Inc., alleging that it had supplied the red beans and rice to Popeye’s. Copeland’s of New Orleans, Inc. (“Copeland’s”) answered the petition and stated that it had been erroneously designated as Al Copeland Investments, Inc. in the plaintiffs petition. Copeland’s later filed an exception of res judicata on the basis of the release signed by the plaintiff, and the district court sustained the exception. The plaintiff appealed, arguing that she did not intend to settle the claim for $89. This court affirmed the trial court’s ruling, stating:
[Ajlford signed a transaction which clearly stated that she was making a final settlement and which plainly warned that it was a release which she should read before signing .... Furthermore, even after she returned home and read the language on the check, which also stated that it was in full settlement of her claims, she proceeded to cash the check and spend the money.
Id. at 56.
We find that the instant case is distinguishable from Alford, supra. In Alford, the plaintiff received a settlement check from Popeye’s/Diversified Foods and Seasonings, a subsidiary of the named defendant in the suit. The lawsuit was answered and defended by Copeland’s, another entity 110intertwined with the named defendant. We did not determine whether the settlement between the plaintiff and Popeye’s constituted a settlement between “the same parties.”[3]
Further, in Thompson, supra, this court stated:
Louisiana’s doctrine of res judicata was based upon a presumption of correctness rather than an extinguishment of a cause of action. A decided case precluded a second suit only if it involved the same parties, the same cause, and the same object of demand as the prior suit. Under La. R.S. 13:4231, as amended in 1991, a second action could be barred because it arises out of the occurrence which was the subject matter of the prior litigation.
*1241 Id. at 512. However, the 1991 amendment to the statute did not affect the sections which required that the parties in the initial litigation be identical to the parties in the second litigation.
In Gilbert v. Visone, 30,204 (La.App. 2d Cir.2/25/98), 708 So.2d 496, a distributor of pacemakers filed a breach of contract suit in federal court against Telectronics, a manufacturer of cardiac pacemakers. The lawsuit was dismissed, and subsequently, the distributor sued its former sales representative, John Visone, in state court. Vi-sone filed an exception of res judicata, and the district court sustained the exception, concluding that the two actions involved the same or virtually the same parties and cause of action. This court reversed, stating:
Under former [LSA-C.C.] Art. 2286, a judgment had preclusive effect on those who were parties to the action Uin which the judgment was rendered, on the successors in interest of those parties, and on others who “shared the same quality as parties,” such as one whose alleged liability derived solely from legal or contractual responsibility for the actions of another.
[[Image here]]
Under federal law, the preclusive effect of a judgment binds the parties to the action and non-parties who are deemed the “privies” of the parties in these limited circumstances: [1] the nonparty is the successor in interest of a party; [2] the nonparty controlled the prior litigation; or [3] the nonparty’s interests were adequately represented by a party to the action who may be considered the “virtual representative” of the nonparty because the interests of the party and the nonparty are so closely aligned.
The broader federal law, like the present state law, (La. R.S. 13:4231 et seq., amending former Art. 2286), precludes not only those claims that were actually litigated in the earlier proceeding, but any other claims between the same parties arising out of the same “transaction” or the same “nucleus of operative facts.”
[[Image here]]
Visone has not asserted or shown in this record that he was a successor in interest of [the manufacturer] in [the manufacturer’s] dealings with [the distributor], or that he controlled [the manufacturer’s] defense of the federal action .... Under these circumstances, we must conclude that the trial court was clearly wrong in characterizing Vi-sone as the [sub]agent for [the manufacturer], the successful defendant in the federal court action. The record will not allow either of the court’s implicit legal conclusions that Visone and [the manufacturer] “shared the same quality as parties” or that [the distributor’s] rights against Visone were “actually litigated” in the federal action.
Id. at 499-501.
In New Orleans Firefighters Assoc. Local 632, AFL-CIO v. City of New Orleans, 2004-2078 (La.App. 4th Cir.3/15/06), 925 So.2d 757, writ denied, 2006-1067 (La.6/23/06), 930 So.2d 986, grievances were filed with the City of New Orleans (“the City”) on behalf of several firefighters. The [ ^firefighters ultimately received a judgment, and the City was ordered to pay backpay and ordered to promote the named firefighters. Thereafter, the City entered into a settlement agreement with a number of firefighters with regard to the previous judgment. The agreement was signed by two representatives for the firefighters, the City Attorney and counsel for the Union. Other firefighters filed suit, and the City raised the exception of res judicata. The district court dismissed the *1242 exception, and the court of appeal affirmed, stating:
[T]he Firefighters were not a party to the settlement agreement. The settlement involved a group of sixteen named plaintiffs involved in the original 1995 suit, but the City omitted the Firefighters involved in this appeal. The exception of res judicata required the parties in the settlement and the suit to be identical. Thus, it is not conclusive as to the omitted parties. The record also lacks evidence of the Firefighters’ consideration or intent to enter into the settlement. Lastly, the settlement lacks a signature that waives the Firefighters’ rights. Any doubt applying res judicata must weigh against its application. The lack of the Firefighters’ intent and a signature on their behalf presents doubt.
Id. at 760 (internal citations omitted).
In the instant case, the language contained within the lengthy settlement agreement was very broad. As noted above, plaintiffs purportedly released, not only St. Francis and its staff, but also released “any and all other persons ... whether or not herein specifically named, of and from any and all claims, actions, causes of actions, rights, demands and damages .... ”
The agreement was apparently drafted by representatives of St. Francis. Dr. Smith was not named in the agreement; Dr. Smith did not sign |lsthe agreement; Dr. Smith was not employed by St. Francis; and Dr. Smith had no contractual relationship with the hospital. Neither Dr. Smith nor a representative of Dr. Smith participated in the settlement negotiations, and no potential rights or claims against Dr. Smith were mentioned in the agreement. We also note that Dr. Smith did not learn of the settlement agreement until nearly a year later, after the instant lawsuit was filed.
Furthermore, Mr. Hines gave uncontro-verted testimony with regard to his intent at the time the settlement agreement was executed. He testified as follows:
Q: What is your understanding of the release that was executed, Mr. Hines?
A: Our understanding was that by signing that release they was [sic] going to release us from owing any bill that it was going to offer my wife a settlement of thirty-three thousand dollars and give us all the evidence to pursue the doctor. That’s what was taking place that day in that room.
Q: So it is your understanding that Dr. Smith was not released?
A: Right.
Q: And to be clear for the court part of the release did encompass release of any outstanding bills that you might, you and your wife might owe St. Francis. Is that correct?
A: Yes, sir. That was part of the terms. The terms was [sic] they was going to give us the money, the documentation against the doctor and expunge our bill. That was the three things that they offered us.
Under the doctrine of res judicata, a valid and final judgment is only conclusive between “the same parties.” There is nothing in the record that convinces us that St. Francis and Dr. Smith should be considered the same |uparties. As we stated above, the essential elements of a compromise are (1) mutual intention of putting an end to the litigation and (2) reciprocal concessions of the parties. It is inconceivable that Dr. Smith intended to end litigation that she knew nothing about, and there were clearly no “reciprocal concessions” between plaintiffs and Dr. Smith. We decline to allow Dr. Smith to now *1243 benefit from the language of an agreement to which she had no part and for which she made no concessions. Accordingly, under the facts of this case, we find that the defendants failed to demonstrate that the plaintiffs intended to release Dr. Smith, a wholly independent party, in their settlement with St. Francis.
Plaintiffs also contend the district court erred in finding that an express reservation of rights was necessary to preserve their rights to pursue their claims against Dr. Smith. The district court found that “when rights are being reserved against a party or a possible party under these circumstances, that reservation must be expressed and in writing in order for it to be preserved.”
Our general rule of law is that no one is presumed to have renounced his rights against others unless it appears that he clearly intended to do so. Carona v. State Farm Ins. Co., 458 So.2d 1275 (La.1984); Kelly v. Owens, 29,613 (La.App.2d Cir.8/20/97), 698 So.2d 757, writ denied, 97-2311 (La.12/12/97), 704 So.2d 1193. Former LSA-C.C. art. 2203 required an express reservation of rights when an obli-gee entered into a compromise with one of several solidary obligors. However, the Louisiana Legislature changed this restriction by Acts 1984, No. 331. LSA-C.C. art. 1803, which went into 115effect January 1, 1985, provides, in part, “[A] transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obli-gor.” Consequently, LSA-C.C. art. 1803 eliminated the prior requirement of an express reservation of rights. See, Weber v. Charity Hosp. of La. at New Orleans, 475 So.2d 1047 (La.1985); Black v. Anderson, 2006-891 (La.App. 5th Cir.3/13/07), 956 So.2d 20, writ denied, 2007-0794 (La.6/1/07), 957 So.2d 180.
Based on the foregoing, we find that the district court was clearly wrong in sustaining the defendants’ exception of res judica-ta. We also find that the district court committed legal error in concluding that plaintiffs were required to expressly reserve their rights to proceed against Dr. Smith.
CONCLUSION
For the reasons set forth herein, we reverse the district court ruling sustaining the defendants’ peremptory exception of res judicata, and we remand this matter for further proceedings. Costs of this appeal are assessed to defendants/appellees, Melissa Ann Smith, M.D. and Louisiana Medical Mutual Insurance Company.
REVERSED; REMANDED.
GASKINS, J., dissents with reasons.
MOORE, J., concurs with reasons.

. In some portions of the record, Dr. Smith is referred to as "Melanie Ann Smith."

. Dr. Smith was not employed by St. Francis. She was employed by North Monroe ER Physicians, Inc., a company that provided emergency room physicians to hospitals on a contractual basis.

. We note that in Alford, the settling party, Popeye’s/Diversified Foods and Seasonings, and Copeland’s, the defending party, were subsidiaries of Al Copeland Investments, Inc., the named defendant. Al Copeland Investments, Inc. owned and operated some Popeye’s restaurants, as well as the rights to some Popeye's products. Those products, including the red beans and rice which caused the plaintiff’s injury, were presumably manufactured through Diversified Foods and Seasonings.