438 So.2d 677 (1983)
Howard D. SNEDEGAR, Plaintiff-Appellee,
v.
NOEL ESTATE, INC., Defendant-Appellant.
No. 15616-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1983.
Writ Denied November 28, 1983.
Weinstein & Hiller by Richard E. Hiller, Shreveport, for defendant-appellant.
Touchstone & Wilson, Ltd. by David M. Touchstone, Shreveport, for plaintiff-appellee.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
Appealing a judgment in favor of plaintiff-lessee ordering specific performance of an option to purchase clause of a lease contract, defendant-lessor contends the trial judge erred in holding that:
(1) The option to purchase clause in the original lease, requiring the lessee to timely reimburse the lessor for payment of property taxes as consideration for exercise of the option, was eliminated by a subsequent modification of the option to purchase provision.
(2) Modified option to purchase clause was valid despite absence of time limit for exercise.
Concluding after our examination of the record, for the reasons hereinafter explained, that the trial judge correctly disposed of the issues posed by this litigation, we affirm.
*678 Howard Snedegar leased from Noel Estate, Inc. [represented by its president, James Noel], effective March 15, 1971, a 1 and 1/19th acre unimproved tract [part of 8.5 acres owned by lessor] fronting on Greenwood Road in Shreveport, for $208.25 per month. The lease contract, prepared by Noel, contained the following provisions relating to an option to purchase:
"3. LESSEE will reimburse LESSOR all monies paid by him for ad valorem tax assessment against the tract or the improvement involved, timely. This reimbursement is the LESSEE'S consideration for the right to buy.
* * * * * *
"5. However, it is agreed and clearly understood that should the LESSEE desire to buy the said tract, the purchase price will be pegged at the sum of forty one thousand six hundred and fifty dollars ($41,650.00) and is exclusive to the LESSEE, AND can be paid the owner or his assignee, by the LESSEE, or his heirs. That cash payment when made will cancel and nullify the lease, and place the LESSEE, on record as the owner, through proper instrumentation."
During the five year primary term of the lease Snedegar placed improvements on the lease property [at a total cost of some $80,000] for use in his business of selling recreational vehicles. The lessee was assessed for and paid ad valorem taxes on these improvements, separate from the land itself.
In 1976 Noel prepared and the parties executed a five year extension to the original lease, agreeing that:
"(1.) The continued evaluation of the LESSOR'S real property at the figure of forty-one thousand six hundred and fifty dollars ($41,650.00), which the LESSEE is granted exclusively the right to purchase with guaranty of title, at any time he elects within the next five years.
"(2.) Previous to the purchase, LESSEE will pay a cash rental timely for each month the sum of three hundred and twenty dollars ($320.00), which payment is pegged for five (5) years.
"(3.) All other features as they apply are retained from the previous lease."
In 1979 Snedegar approached Noel with a request to purchase a strip of land lying adjacent to and east of the lease property. Agreement was reached on a 30-foot strip for which Snedegar paid $15,600. Although no act of conveyance was executed at the time, Noel prepared in his handwriting the following styled "addenda to former lease-purchase agreement." dated October 4, 1979:
"Dear Mr. Snedegar:
For the promises and considerations made me, I as owner, chief officer and stockholder of the Noel Estate, Inc. do, herewith, bind myself to convey to you the present optioned lot, plus a 30' strip off the East side to you, or your son, exclusively, for the sum of $43,000.00, cash, when exercised.
I also understand that were I to desire to buy one of your trailers, campers, or various vehicles I shall be sold the same at your costs, net.
Conveyance by either party shall be a cash-sale deed, whenever you elect so long as it is under the term arrangements made with joint consent in my sale exclusively to you; or, without time limits as to my purchase of your vehicle, so long as you are in business."
In October 1980 Noel requested that Snedegar "release" the 30-foot strip for which the latter paid in 1979. Upon Snedegar's refusal, Noel informed the lessee that he could no longer exercise the option to purchase because of his failure to timely reimburse the lessor for its payment of ad valorem taxes on the lease property. In response, Snedegar filed this suit for specific performance in December 1980. In essence, the defense was the above described position asserted by Noel.
At the trial it was established that in mid-1971 Snedegar made inquiry of Noel *679 concerning the amount of property taxes the lessee would owe that year and was advised that Noel would not have this information until his receipt of the tax assessment at the end of the year. Both parties conceded that the subject was not raised again until October 1980. In fact, Noel testified that he "did not even think about the tax requirement" between the time of the 1971 conversation and Snedegar's refusal to "release" the 30-foot strip in 1980.
It was also revealed at the trial that defendant had executed six different leases [including plaintiff's] covering various portions of the 8.5 acre tract and received one tax bill for the entire tract. Obviously, therefore, Snedegar would not have been in a position to know any exact tax liability of his until it had been computed by Noel.
In a written opinion the trial judge reasoned as follows:
"[N]othing in Exhibit C [1979 addenda to original lease] changes the original lease or the extension of the lease signed in 1976. However, Exhibit C changes the option to purchase considerably ....
"Since it is admitted by the parties that there had been no discussion of the reimbursement of ad valorem taxes since 1971, and there is nothing in Exhibit C which can be construed to require the reimbursement of ad valorem taxes as a condition of the option granted in 1979, the Court holds that all Mr. Snedegar had to do in order to exercise the option contained in Exhibit C was to comply with his obligations as set out in Exhibit C, i.e., pay $42,000.00 cash, and sell Mr. Noel a vehicle at cost. Certainly this last consideration amounted to considerably more than the reimbursement of ad valorem taxes on the property over the ten year period, which were stipulated to total $1,442.26 through the first quarter of 1981....
"In summary, the Court believes that Exhibit C is a new agreement with regard to the option to purchase."
The thrust of defendant's argument on appeal is that the 1979 addenda to the original lease was not a new contract with reference to the option to purchase and, consequently, did not eliminate the requirement for timely reimbursement of property taxes as a predicate for exercise of the option to purchase.
As set forth above, paragraph 3 of the original lease provided that the lessee "will reimburse" the lessor all monies paid by the latter for ad valorem taxes assessed to the lease property "timely", and that this reimbursement would constitute the consideration for lessee's option to purchase. This clause is somewhat ambiguous and is susceptible to the interpretation that timely reimbursement of property taxes was a condition of the lease as well as consideration for the option to purchase. However, as evidenced by the subsequent conduct of the parties, neither understood nor intended this to be a condition of the lease. The inaction of the lessor is particularly significant since it was incumbent upon Noel to advise Snedegar of his pro-rata share of the property taxes.
Agreements legally entered into have the effect of law upon the parties thereto. Such contracts may be modified or abrogated by the mutual consent of the parties. La.C.C. Art. 1901; Bruhl v. White, 346 So.2d 734 (La.App. 1st Cir.1977); Prisock v. Boyd, 199 So.2d 373 (La.App. 2d Cir.1967).
Courts are bound to give legal effect to contracts according to the true intent of the parties, as generally determined by the words of the contract when these are clear and specific. La.C.C. Art. 1945(2) and (3).
In this codal context we have examined the 1979 addenda to the original lease and agree with the trial judge that it obviously constituted a significant modification of the prior option to purchase clause, in the following respects:
(1) Purchase price of the lease property was increased from $41,650 to $42,000.
(2) Provision added obligating lessor to convey 30 foot strip [previously paid for by lessee].

*680 (3) Lessee obligated to sell lessor, at cost, a recreational vehicle.
(4) No mention of reimbursement of property taxes as consideration for exercise of option to purchase.
We further point out that the affirmative covenants of the lessee stipulated in the contract of lease were sufficient consideration for the option to purchase, without the legal necessity to add any other specific consideration. See Kinberger v. Drouet, 149 La. 986, 90 So. 367 (1922).
Defendant's argument that the 1979 modification of the original lease is invalid for failure to state a time limit is without merit. An option agreement which is part of a lease having a definite term [as here] is necessarily limited to the term of the lease. Kinberger v. Drouet, supra; Smith Enterprises, Inc. v. Borne, 245 So.2d 9 (La.App. 1st Cir.1971).
For these reasons, we affirm the judgment of the district court, at appellant's cost.