CARAWAY, J.
 

 JQThis dispute among family members concerns the ownership of a former partnership interest owned by the deceased spouse and father of the plaintiff and defendant respectively. Following the partner’s death, the partnership later changed the form of its business entity into a limited. liability company. The plaintiffs suit against her son and the limited liability company seeks recognition of her ownership in the new company. After a trial, the court ruled in plaintiffs favor, and this appeal followed. For the following reasons, we affirm the trial court’s judgment in part and amend the judgment in part to reflect the alternative relief sought by the limited liability company.
 

 Facts
 

 This suit arises out of a family dispute over a membership interest in Palmetto Farms Limited Liability Company (hereinafter the “LLC”). The plaintiff, Lola Leona Gibbs Grosjean (“Lola”), sued her son, Robert E. Grosjean (“Robert”), and the LLC over a one-tenth membership interest of the LLC which was listed in Robert’s name. The membership interest stems from a prior partnership interest originally acquired by Victor Grosjean (“Victor”), Lola’s deceased husband and Robert’s father.
 

 On April 28, 1983, Palmetto Farms, an ordinary partnership (hereinafter “the Partnership”) was created. The Partnership was the owner of land in Bossier Parish. The Partnership essentially functioned as a hunting club, whereby individual partners were permitted to hunt the partnership land. In order to maintain and make improvements upon |2existing partnership land, as well as to occasionally acquire additional acreage, partners were
 
 *236
 
 required to make annual payments, referred to as “assessments.” The original agreement for the Partnership was signed by each new partner and their respective spouses, but provided specifically:
 

 That the spouses of the partners shall have no authority with regard to any business of the partnership and they appear herein to consent to the partnership agreement and do so agree that their respective spouses may deal with all property in the partnership’s name without the signature of themselves.
 

 Also, the written agreement for the Partnership did not contain provisions for the death of a partner.
 

 At the time of the 1988 formation of the Partnership, no Grosjean family member was a partner. However, in accordance with an October 31, 1986 document titled “Second Amendment and Restatement of Palmetto Farms Partnership,” Victor became a partner of the Partnership by acquiring a one-ninth interest. The amendment named as new partner “Victor Grosjean, husband of Lola Gibbs Grosjean.”
 

 A “Third Amendment and Restatement of Palmetto Farms” was subsequently executed on February 12, 1988, whereby a one-ninth partnership interest was conveyed to Lola and her two daughters, Vickie Grosjean Cox and Waynette Grosje-an Guillory. This interest was purchased using funds from their business partnership (hereinafter the “GG & C interest”). Further pursuant to the Third Amendment, the remaining partners of the Partnership conveyed an undivided one-tenth interest in the partnership to Grosjean Contractors, Inc. (“Contractors, Inc.”),
 
 [1]
 
 a family | .¡business, incorporated by Victor in 1977 and owned in community by Victor and Lola.
 
 [2]
 
 By virtue of the Second and Third Amendments, the Grosjean family collectively owned three partnership interests in the Partnership.
 

 A “Fourth Amendment and Restatement of Palmetto Farms,” was executed on February 12, 1989. It amended the original partnership agreement to replace the previous mandatory unanimity voting requirement with a two-thirds vote for decisions affecting the partnership. Additionally, it adopted the following provision:
 

 During the existence of the partnership there shall be no more that [sic] ten partners and each partner shall designate a member to utilize the property which is owned by the partnership in accordance with the by-laws and other rules and regulations adopted by the partnership. This member shall have the exclusive right to utilize the surface of the partnership property and other assets owned by the partnership in accordance with the rules established in the by-laws and other rules and regulations adopted by the partnership. The designation of the member to have the rights described hereinabove shall only occur after a two-thirds (2/3) vote of approval of the remaining members of the partnership. It is specifically acknowledged that upon the designation of the member by the partner and that member being approved by the other members that that member has the authority to vote on all partnership matters for the partner that they represent.
 

 
 *237
 
 The three Grosjean interests, each representing a one-tenth interest, were listed individually on the February 1989 Fourth Amendment as “Victor E. Grosjean,” “Grosjean Roofing and Sheet Metal Contractors Incorporated” and “Grosjean, Guillory and Cox, a partnership consisting of Lola Gibbs Grosjean, Vicky Grosjean Cox, and Waynette Grosjean |4Guillory.” Ronald Cox, husband of Vickie Grosjean Cox, was designated the hunting member for the GG & C interest.
 
 [3]
 

 Victor died on September 11, 1989, survived by his spouse and six children. Victor died testate leaving Lola one-half of all his community and separate property which he owned at the time of his death. Victor’s children inherited the other one-half of his community property subject to Lola’s usufruct as reflected in a September 1990 Judgment of Possession. The description of the succession property listed in the judgment did not reference a partnership interest in the Partnership, but did identify “a tract of land known as Palmetto Farms” along with a legal description of that land.
 

 Following Victor’s death, the ten memberships in the Partnership continued to be recognized, and assessments by the Partnership for all three Grosjean family interests continued to be made. The K-l tax filing for the Partnership in 1990 made a change by listing Victor’s former interest in Contractors, Inc. Additionally, the GG
 
 &
 
 C interest which was previously shown as a separate K-l partnership interest was listed in Contractors, Inc. Payments for the Partnership’s assessments were made through Contractors, Inc. on behalf of all three interests.
 

 On November 27, 1995, the LLC was created. On the same day, pursuant to a “Resolution of the Partners of Palmetto Farms Partnership,” all of the Partnership assets were conveyed to the LLC and the LLC assumed | Bany and all liabilities of the Partnership. The Resolution provided specifically:
 

 RESOLVED, that the partnership convey unto Palmetto Farms, L.L.C. all that property listed on Exhibit “A” attached hereto for the consideration that the partners of Palmetto Farms contribute assets into the L.L.C. and that Palmetto Farms, L.L.C. assume any and all liabilities of the partnership in that certain property listed on Exhibit “A” attached hereto.
 

 On November 28, 1995, the Partnership was terminated as shown by the document entitled, “Termination of Palmetto Farms, An Ordinary Partnership,” wherein the partners acknowledged “the dissolution, termination and liquidation of the partnership.” Both the Resolution and Termination were signed by Robert. Robert signed the Resolution in his capacity as a “partner” of the Partnership. These documents are also signed by Ronald C. Cox on behalf of the GG & C interest and by Michael Grosjean, the youngest son of Victor and Lola Grosjean, on behalf of Contractors, Inc. Nevertheless, trial testimony revealed that Michael did not actually sign the documents; rather, Robert signed Michael’s name as the representative of Contractors, Inc.’s interest. The two disputed whether Robert was given Michael’s authorization to sign the Resolution.
 

 Ten interests or memberships continued to be represented in the LLC, including the interests of Contractors, Inc. and GG & C. Victor’s interest, however, was no longer evidenced in any of the documenta
 
 *238
 
 tion of the LLC. Rather a new membership interest was shown in the name of “Robert E. Grosjean.” The formation documents of the LLC therefore name as members the partners of the recently terminated Partnership, excepting the original Victor Grosjean interest and inserting the new Robert E. Grosjean | ^membership. The Articles of Organization of the LLC names as organizers John A. Russo, Jr., Joseph A. Tauzin, Ronald C. Cox and Robert E. Grosjean. The Initial Report of the LLC names these four men as the managers of the LLC and then lists as the LLC’s first members: Grosjean, Guillory and Cox, Robert E. Grosjean, Grosjean Contractors, Inc., and the seven other former partners.
 

 Trial testimony consistently revealed that the sole purpose of the LLC’s creation was to limit the liability of the members in contrast to their former status as partners. The testimony of Dr. Judd Hen-drick Chidlow revealed that he became a partner in the Partnership in 1992 and was currently a member of the LLC. Although Dr. Chidlow was unable to remember specific details regarding the 1995 transactions, he did recall that with the formation of the LLC, the Partnership ceased being a legal entity. He testified that in creating the LLC, there was no intent on behalf of the partners to force anyone out of the organization and that the LLC was simply being formed because it was a better way of doing business. Dr. Chidlow had no specific knowledge regarding the Grosjean family interests in Palmetto Farms.
 

 By Act of Sale, dated May 31, 2005, Contractors, Inc. sold its interest in the LLC to another party. Thereafter, GG & C sold its interest in the LLC in June 2007 for $125,000. The Robert E. Grosjean interest therefore was the only remaining Grosjean family interest in the LLC and remains the present source of contention.
 

 |7On June 30, 2005, a “Shareholders Agreement” was reached whereby Robert and his sister, Vickie Cox, purchased all of the outstanding shares of stock in Contractors, Inc. held by Lola in exchange for the purchase price of $300,000. Lola additionally surrendered all of her usufructuary interest in the company stock and was provided certain income rights by future payments from the company. Upon the conclusion of this sale, Robert and Vickie were collectively vested with ownership of 916.67 shares of the total 1,000 shares outstanding. Robert subsequently acquired the remaining 83-1/3 shares owned by his sister, Waynette G. Dupuy and thereafter, in 2008, Robert purchased Vickie’s 458-1/3 shares of stock, making him the sole shareholder of Contractors, Inc.
 

 On October 4, 2007, Lola filed a petition for declaratory judgment and monetary damages, seeking to have recognized a one-tenth ownership interest in the LLC. Lola’s petition named Robert as a defendant, contending he unlawfully usurped her ownership interest in Palmetto Farms by causing himself to be identified as a partner and later as a member of the LLC without ever personally purchasing an interest in either entity. She further asserted that she was unaware of the conveyance of the partnership assets from the Partnership to the LLC and therefore the November 27, 1995 Warranty Deed was executed without her knowledge or consent. Lola’s petition additionally asserts her family’s ownership of Victor’s interest, claiming her usufruct over the interest of her children. Lola additionally named the LLC as a “nominal defendant” only for the recognition of Lola’s ownership and usu-fructuary interest.
 

 1 ^Robert answered and made Contractors, Inc. a third party defendant, asserting that the corporation was the true own
 
 *239
 
 er of the subject interest and that he was merely the previous partner representative in the Partnership and was currently the member representative in the LLC on behalf of Contractors, Inc. Contractors, Inc. subsequently answered and cross claimed against Lola, asserting its ownership in the LLC. Alternatively, in the event Lola is successful in proving ownership, Contractors, Inc. claims entitlement for offset for having paid fees, dues and assessments related to the Partnership and the LLC from 1986 to present. The LLC filed peremptory exceptions of no cause of action, no right of action and prescription.
 

 A bench trial was held in July 2009. In its written opinion, the trial court determined that Lola’s action was best characterized as a real action, specifically a re-vendieatory action recognized by Civil Code article 526. The court found this action to be imprescriptible. The court also rejected the claims of acquisitive prescription raised by Robert and Contractors, Inc. and ruled that the original partnership interest of Victor was now owned by Lola and his children as a membership interest in the LLC.
 

 Regarding the claims of Contractors, Inc., the trial court’s written reasons for judgment stated:
 

 Grosjean Contractors, Inc. has asserted that it is the owner of the interest held in the name of Robert Grosjean. However, the Court notes that there is no evidence indicating the transfer of ownership of such interest to the corporation. Again, testimony during the trial revealed to the Court that the asset was only carried on the books of the corporation in order to increase its bonding capacity.
 

 [[Image here]]
 

 | flGrosjean Contractors’ cross claim against plaintiff alleging it is entitled to monetary judgment against plaintiff for all of the fees and assessments, which it purportedly paid on her behalf, is denied. The court finds that the company benefitted from carrying the assets on its financial statements for bonding purposes and also received the benefit of being allowed to designate employees of the company and others, hunting privileges in exchange for any monies paid.
 

 By judgment dated November 4, 2009, the trial court denied all three peremptory exceptions filed by the LLC. It then provided:
 

 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Plaintiff, Lola G. Grosjean, and against Defendants, Robert E. Grosjean and Palmetto Farms, L.L.C., recognizing Lola G. Grosjean’s ownership and the ownership of the heirs of Victor E. Grosjean of the membership interest in Palmetto Farms, L.L.C. listed in the name of Robert E. Grosjean, said ownership interests as recognized in the Succession of Victor Grosjean, Suit Number 8881, 26th Judicial District Court, Bossier parish, Louisiana, and specifically identified as follows:
 

 Lola Gibbs Grosjean 75%
 

 Robert E. Grosjean 4.16666%, subject to usufruct of Lola Gibbs Grosjean
 

 Vickie Grosjean Cox 4.16666%, subject to usufruct of Lola Gibbs Grosjean
 

 Waynette Grosjean Dupuy 4.16666%, subject to usufruct of Lola Gibbs Grosjean
 

 Richard Wayne Grosjean 4.16666%, subject to usufruct of Lola Gibbs Grosjean
 

 Will D. Grosjean 4.16666%, subject to usufruct of Lola Gibbs Grosjean
 

 Michael T. Grosjean 4.16666%, subject to usufruct of Lola Gibbs Grosjean
 

 
 *240
 
 The judgment then went on to dismiss Contractors, Inc.’s cross claim against Lola and to cast defendants with all costs. From this judgment, Robert, Contractors, Inc. and the LLC appeal.
 

 Plaintiff’s Cause of Action
 

 The appellants raise significant issues regarding the plaintiffs cause of action along with the defense of acquisitive prescription by Robert. Appellants also disagree with the trial court’s characterization of the claim as a revendicatory action.
 

 11 ^Additionally, as a related matter, this court notices on its own the judgment’s remedy in favor of five of Victor’s children who were not parties to the action. The peremptory exception for the nonjoinder of parties may be raised and granted by the appellate court on its own motion. La. C.C.P. art. 927.
 

 The resolution of these issues turns on the nature of the property rights at issue when those rights concern ownership of an interest in a partnership and limited liability company. The Civil Code chapter for the “Division of Things” states that “things are ... corporeals and incorporeals; and movables and immovables.” La. C.C. art. 448. Corporeals have a body and can be felt or touched. La. C.C. art. 461. Incor-poreals are things that have no body, but are comprehended by the understanding, such as the rights of inheritance, servi-tudes, obligations, and right of intellectual property.
 
 Id.
 
 All things, corporeal and incorporeal, that the law does not consider as immovables, are movables. La. C.C. art. 475.
 

 From these principles, the Civil Code expressly recognizes that an interest in a partnership or a limited liability company is an incorporeal movable, as follows, in Article 478:
 

 Rights, obligations, and actions that apply to a movable thing are incorporeal movables. Movables of this kind are such as bonds, annuities, and interests or shares in entities possessing juridical personality.
 

 Likewise, our corporations law states that a membership in a limited liability company is an incorporeal movable. La. R.S. 12:1329.
 

 Plaintiffs petition therefore makes an ownership claim to an incorporeal movable which, in this case, is the membership in the LLCj^iOwnership is identified under Civil Code Article 476 as one of the three “rights in things.”
 
 [4]
 
 Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law. La. C.C. art. 477. Significant for this dispute, Civil Code Article 481 provides:
 

 The ownership and the possession of a thing are distinct.
 

 Ownership exists independently of any exercise of it and may not be lost by nonuse. Ownership is lost when acquisitive prescription accrues in favor of an adverse possessor.
 

 
 *241
 
 In this case, plaintiffs dispute over ownership, insofar as it involves Robert and her nonparty children, concerns co-ownership or, more precisely, the relationship between the usufructuary and naked owner of a thing. In this regard, Civil Code Article 566 provides:
 

 The usufructuary may institute against the naked owner or third persons all actions that are necessary to insure the possession, enjoyment, and preservation of his right.
 

 Concerning the revendicatory action and Robert’s defense of acquisitive prescription under La. C.C. arts. 3489,
 
 et seq.,
 
 the Civil Code provides:
 

 La. C.C. art. 526. The owner of a thing is entitled to recover it from anyone who possesses or detains it without right and to obtain judgment recognizing his ownership and ordering delivery of the thing to him.
 

 1 üjLa. C.C. art. 3491. One who has possessed a movable as owner for ten years acquires ownership by prescription. Neither title nor good faith is required for this prescription.
 

 For both of these issues, the Civil Code’s definition of possession must first be considered since both acquisitive prescription and the revendicatory action involve possession of a thing and the conflict over ownership that arises from an adverse possessor.
 

 Civil Code Article 3421 defines possession as follows:
 

 Possession is the detention or enjoyment of a corporeal thing, movable or immovable, that one holds or exercises by himself or by another who keeps or exercises it in his name.
 

 Article 3421 continues and addresses the so-called quasi-possession of a real right, such as a predial servitude, since such incorporeal rights may be exercised by use and thus are susceptible of a type of possession.
 
 See,
 
 former Article 3432, Civil Code (1870). The disputed interest in the LLC is neither a corporeal thing nor a real right.
 

 As can be seen therefore by this definition for “possession,” the “detention” of a “corporeal thing” is essential. Therefore, the incorporeal thing or incorporeal movable in this action cannot be corporeally possessed or detained by another. Likewise, within the remedy afforded by the revendicatory action, “delivery of the thing” to the plaintiff and the ending of the detention of the thing by the defendant indicate the owner’s recovery of a corporeal movable in kind.
 

 Accordingly, we do not find that Robert may assert that Lola’s claims of ownership of a partnership interest of her deceased husband and the present interest in the LLC were lost by acquisitive prescription due to any | ^adverse possession of those incorporeal movables.
 
 [5]
 
 We likewise do not find that plaintiffs claim falls squarely under the revendicatory action as defined in Article 526. Nevertheless, plaintiffs petition expressly asserts a claim for declaratory judgment for the recognition of her ownership of the incorporeal rights in dispute. That claim of ownership may not be lost by acquisitive prescription. Likewise, under Article 481, since “ownership exists independently of any exercise of it and may not be lost by nonuse,” we find that plaintiffs suit has set forth a timely cause of action against Robert for a
 
 *242
 
 judgment declaring the ownership of the incorporeal movable.
 

 Nevertheless, the asserted recognition of Lola’s ownership in the interests or shares in the Partnership and LLC entities concerns more than just the adverse claim of Robert, but also the contractual agreements for the formation and operation of those entities and the mutual understanding of the partners/members. Plaintiff has named the LLC as a defendant, and the judgment now in dispute purports to bind the LLC for the recognition of her ownership in the defendant entity and that of the unnamed parties. Given the plaintiffs power as usufructuary under Article 566 for the preservation of the incorporeal rights in dispute and the limited liability feature of our limited liability company law (La. R.S. 12:1320), we do not find that the peremptory exception of nonjoinder of these parties is warranted.
 
 [6]
 

 |
 
 uDiscussion
 

 The complex issues raised by appellants concern not only the transactions and intentions of the Grosjean family but also the transactions and intentions of the former partners of the Partnership and the membership of the LLC. While certain legal issues are presented, the trial court’s judgment rests largely upon its findings of fact.
 

 It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are reasonable.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989);
 
 Menard v. Lafayette Ins. Co.,
 
 09-1869 (La.3/16/10), 31 So.3d 996;
 
 Brown v. Brian Riley Bar Transport, LLC,
 
 43,326 (La.App.2d Cir.6/11/08), 986 So.2d 901. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly wrong.
 
 Rosell, supra; Cole v. State Department of Public Safety and Corrections,
 
 01-2123 (La.9/4/02), 825 So.2d 1134. Where the fact finder’s conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
 
 Rosell, supra.
 

 |15The initial factual and legal controversy which the parties debate concerns the ownership of Victor’s interest in the Partnership, which he apparently acquired as a community property interest during his marriage with Lola. Lola insists that the “partnership interest at issue belonged to Victor and Lola,” which would have implications regarding that interest both before and after Victor’s death. Robert asserts that Victor’s “partnership interest did not devolve to his heirs.” These arguments about a “partnership interest” are resolved by a review of the codal provisions on community property and the law of partnership. In the law, there is a clear distinction between one’s membership in the partnership as a partner and his partnership interest or value in which his spouse and heirs may have rights.
 

 There is no dispute in this record that Victor and Lola first acquired rights in the
 
 *243
 
 Partnership in Victor’s name as their community asset. Nevertheless, it is also clear that only Victor, and not Lola, was one of the nine named partners identified in the 1986 “Second Amendment and Restatement of Palmetto Farms Partnership.” Before his death, his partnership share decreased to one-tenth with nine other partners in the Partnership. As such, Civil Code Article 2352
 
 [7]
 
 shows that the management right of this community asset of the Grosjeans was exclusively Victor’s and that Lola could not “affect the legal relationship of the partner spouse and the other partners” of Palmetto Farms Partnership. Official Revision Comment, La. C.C. art. 2352.
 

 [ 16After the Civil Code revision of the law of partnership in 1980, a substantial change in the law concerned the continuity of the partnership as a separate and distinct entity despite events such as death or bankruptcy that might terminate an individual partner’s membership in the partnership. La. C.C. arts. 2801 and 2818, and Official Revision Comments, 1980. Upon the cessation of a partner’s membership, which in this case resulted by Victor’s death, the partnership entity continues in the absence of any contrary provision of the partnership agreement, and the following code articles apply:
 

 La. C.C. art. 2823: The former partner, his successors, or the seizing creditor is entitled to an amount equal to the value that the share of the former partner had at the time membership ceased.
 

 La. C.C. art. 2824: If a partnership continues to exist after the membership of a partner ceases, unless otherwise agreed, the partnership must pay in money the amount referred to in Article 2823 as soon as that amount is determined together with interest at the legal rate from the time membership ceases.
 

 In 1989 at the time of Victor’s death, there was no contractual provision governing the Partnership which would alter or prevent the operation of Articles 2823 and 2824. Therefore, this law would supplement the partners’ contract for the consequences of the death of a partner. The result in 1989 at Victor’s death would be that each of the nine remaining partners’ interests would have increased from one-tenth to one-ninth, while the Partnership itself would owe an amount equal to the value of Victor’s former one-tenth share. It is this result which Robert and the LLC, as the successor to the debts of the Partnership, now assert. The LLC, which assumed the Partnership’s debts, has also urged prescription regarding any | i7claim by Lola and Victor’s heirs for the accounting obligation owed by the Partnership for Victor’s share under Article 2824.
 

 While the suppletive law of Articles 2823 and 2824 supports the appellants’ view of the status of the Partnership following Victor’s death, the facts support the trial court’s conclusion that Victor’s partnership interest continued after his death. The Partnership’s tax filings after Victor’s death show that ten partnership shares were continued. The Partnership never attempted to follow the dictates of Article 2824 by determining the value of Victor’s share and offering that amount to Lola and Victor’s heirs. Instead, Contractors, Inc. was billed for the three Grosjean partnership shares for the annual assessments of the Partnership. Contractors, Inc., as the family corporate entity under Lola’s ownership control, acted as the representative for the family in the maintenance of
 
 *244
 
 the three family shares within the Partnership. In 1995, at the time of the execution of the termination documents by all partners, the Partnership still reported ten partnership shares without any assertion that Victor’s death had reduced the Partnership membership to nine. Finally, while the 1995 documentation lists Robert’s name for a one-tenth share in the Partnership, there was no showing by the appellants that following Victor’s death the nine remaining partners conveyed a one-tenth interest to Robert in return for a new value contributed by Robert to the Partnership.
 

 A partnership is created by contract. La. C.C. art. 2801. Since the Palmetto Farms Partnership involved the ownership of immovable property from its inception, the Partnership’s creation was by written contract, and 11Rthe record reveals the initial filing of the contract of partnership with the secretary of state in 1983.
 
 See
 
 La. C.C. art. 2806. Aside from issues surrounding a partnership’s ownership of immovable property as addressed in Civil Code Article 2806, a writing is not essential to a partnership agreement.
 
 Lang v. Sproull,
 
 45,208 (La.App.2d Cir.4/28/10), 86 So.3d 407;
 
 Porter v. Porter,
 
 36,007 (La.App.2d Cir.6/12/02), 821 So.2d 663;
 
 Butler v. Sudderth,
 
 00-1950 (La.App. 5th Cir.4/24/01), 784 So.2d 125,
 
 writ denied,
 
 01-1905 (La.10/5/01), 799 So.2d 485;
 
 Diaz v. Kelley,
 
 562 So.2d 21 (La.App. 5th Cir.1990);
 
 Harris v. Wallette,
 
 538 So.2d 728 (La.App. 2d Cir.1989). Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent. La. C.C. art. 1927. Agreements legally entered into have the effect of law upon the parties thereto, and may be modified or abrogated by the mutual consent of the parties.
 
 Snedegar v. Noel Estate, Inc.,
 
 438 So.2d 677 (La.App. 2d Cir.1983),
 
 writ denied,
 
 442 So.2d 459 (La.1983). The law is clear that written contracts may be modified by oral contracts and the conduct of the parties.
 
 Rhodes Steel Bldgs., Inc. v. Walker Const. Co.,
 
 35,917 (La.App.2d Cir.4/3/02), 813 So.2d 1171;
 
 Williams Engineering, Inc. v. Goodyear,
 
 480 So.2d 772 (La.App. 5th Cir.1985);
 
 Maryland Cas. Co. & Southern Equipment, Inc. v. Watson Marine Repair & Cleaning Service, Inc.,
 
 416 So.2d 194 (La.App. 1st Cir.1982),
 
 writ denied,
 
 421 So.2d 249 (La.1982).
 

 In
 
 Diaz, supra,
 
 the court recognized that the plaintiff had become a partner in an existing partnership by merely paying a capital contribution to |13the partnership without any other written evidence of her membership as a partner. The court found that she was admitted as a new partner by her payment and the action of the partnership in receiving the payment, and the partnership was so modified.
 

 From these principles, the trial court’s conclusion that Victor’s partnership interest remained as a separate partner’s share in the Partnership after his death is supported by law and fact.
 
 While the Partnership could have insisted upon the cessation of Victor’s membership share in the Partnership under Civil Code Articles 2823 and 2821, it did not.
 
 By the implications of the Partnership’s actions, Victor’s share was recognized as remaining in the Grosjean family, and the suppletive legal effect of the codal provisions which would otherwise govern the Partnership was modified. None of the remaining nine partners testified to the contrary, as each was content to remain as a one-tenth partner in the Partnership through the time of the Partnership’s termination in 1995.
 

 Regarding the use of Robert’s name in association with Victor’s share of the Partnership after 1989, the Fourth Amendment
 
 *245
 
 to the Partnership quoted above shows that a partner’s share owned other than by a single individual required the designation of one person or “member” for the enjoyment of the exclusive right to utilize the land and other assets of the Partnership. Thus, while the Partnership had partners that were business entities, a single “member” representing such partner utilized the property for hunting and related privileges. As Victor’s partnership share was first administered by his succession and later placed into the possession of his |2owife and heirs, the fact that Robert, one of the heirs, was identified with that interest as the “member” participant for his family’s share did not represent an aberration in the conduct of the Partnership’s affairs between 1989 and 1995.
 

 Accordingly, we reject the appellants’ contentions that Victor’s partnership interest did not survive after his death as a partner’s share recognized by the Partnership and owned by Lola and Victor’s heirs. We further reject Robert’s contention that because of Contractors, Inc.’s payment of annual assessments for this disputed interest and the identification of the interest in Robert’s name, the community asset of Robert and Lola became owned by either the company or Robert. There was sufficient testimony of the commingling of Victor and Lola’s personal matters with their closely held corporation before and after Victor’s death to support the trial court’s conclusion that the partnership share which was first acquired in Victor’s name in 1986 remained his personal asset and that of his wife and heirs, including Robert, until the termination of the Partnership in 1995.
 

 Next, regarding the end of the Partnership in 1995 and the formation of the LLC, Robert argues:
 

 (1)There was no merger or conversion that occurred between the two entities;
 

 (2) Lola was never a member of the LLC; and
 

 (3) Although Robert was the named member for the disputed interest of the LLC, he held possession of the membership for Contractors, Inc. and therefore, in any event, acquired the interest in his later purchase of the company.
 

 12i While the LLC also argues Lola’s lack of membership in the LLC, it asserts alternatively that the judgment should be amended to reflect that the LLC interests of Lola and the other non-party children be that of non-member owners/assignees in accordance with our statutory provisions for the assignment of interests in the LLC. La. R.S. 12:1330 and 1332(A).
 

 Any technical label of merger, conversion or buy-out which might be placed upon the 1995 transaction between the Partnership and the LLC has primary relevance for understanding the mutual intent of the founding members of the newly formed limited liability company.
 
 See
 
 La. R.S. 12:1304(A). With the former Victor Grosjean partner share having been allowed to remain as an interest in the Partnership as discussed above, the intention of the new members for the treatment of all the former partners’ interests upon their creation of the LLC is relevant. Since the LLC did not exist as a separate entity before the 1995 transactions, there was no prior capitalization for its ownership and membership independent of its transactions with the Partnership. The nine partners’ shares which are not disputed became equivalent membership and ownership interests in the LLC. The asset holdings and liabilities of the Partnership became the initial assets and liabilities of the new entity.
 

 Contrary to Robert’s assertion, the Partnership was not dissolved by the liquidation process under Civil Code Arti-
 
 *246
 
 cíes 2832,
 
 et seq.,
 
 with its debts paid to its creditors. There was likewise not a sale of the Partnership assets to the LLC and a distribution of sale proceeds to the partners. Instead, under the circumstances presented, the corporation code’s _J_2gdefínition of a business conversion appears applicable. As La. R.S. 12:1601(1) provides:
 

 “Conversion” means the continuance of a domestic entity of one type as a domestic entity of another type.
 

 From the non-legal analysis of Dr. Chid-low, there was no intent on behalf of the partners to force anyone out of the organization, and simply, a better business entity was chosen for the group’s endeavor.
 

 As a result of the 1995 LLC transaction, the underlying ownership of the disputed one-tenth interest involved somewhat ambiguously both Robert and Lola. Robert’s name was listed as the initial member in the LLC. Yet, Robert was a co-owner with his family members of his father’s estate, and like the former limitation of the Partnership for ten participating members, there were only ten members of the LLC. Significantly, Lola’s home address was listed oh the initial report with the secretary of state as the registered address of the LLC. This reflects that the 30% ownership interest (three memberships) of the Gros-jean family was retained in the LLC. Finally, Lola executed a personal guaranty for the debts of the LLC on November 19, 1996.
 

 Under these circumstances, from the perspective of the seven founding members of the LLC who were not Gros-jean-related parties, their intentions and actions in dealing with Robert and in naming him as a member in the LLC does not exclude their understanding of him as a co-owner acting on behalf of the ownership of his family as derived through Victor Gros-jean.
 
 Cf.
 
 La. C.C. art. 802 (providing that as against third persons, a co-owner has the right to use and enjoy the thing as if he were the Insole owner). Their acceptance of Lola’s continued involvement with the debts of the LLC does not reflect any intent contrary to her continuing ownership. The trial court’s ruling therefore reflects this measure of the intentions of such founding members of the LLC for the entity’s creation, and its fact determination is not manifestly in error. Accordingly, we find that the ownership of Victor’s former partnership interest remained owned by his wife and children as a one-tenth interest in the LLC.
 

 Regardless of this conclusion about Lola’s and her children’s ownership of economic rights in the LLC, member management and privileges can be separate from the ownership of the economic rights for an interest in a limited liability company under Louisiana law. For example, the provisions of the corporation code addressing an assignment of a member’s interest in a limited liability company or a member’s death reveal, in pertinent part, as follows:
 

 La. R.S. 12:1330. Assignment of membership interest
 

 A. Unless otherwise provided in the articles of organization or an operating agreement, a membership interest shall be assignable in whole or in part. An assignment of a membership interest shall not entitle the assignee to become or to exercise any rights or powers of a member until such time as he is admitted in accordance with the provisions of this Chapter. An assignment shall entitle the assignee only to receive such distribution or distributions, to share in such profits and losses, and to receive such allocation of income, gain, loss, deduction, credit, or similar item to which the assignor was entitled to the extent assigned.
 

 
 *247
 
 B. Unless otherwise provided in the articles of organization or an operating agreement, the pledge of or granting of a security interest, lien, or other encumbrance in or against any or all of the membership interest of a member shall not cause the member to cease to be a member or to have the power to exercise any rights or powers of a member. I24C. Unless otherwise provided in a written operating agreement and except to the extent assigned by agreement, until an assignee of a membership interest becomes a member, the assignee shall have no liability as a member solely as a result of such assignment.
 

 La. R.S. 12:1332. Right of assignee to become a member.
 

 A. Except as otherwise provided in the articles of organization or a written operating agreement:
 

 (1) An assignee of an interest in a limited liability company shall not become a member or participate in the management of the limited liability company unless the other members unanimously consent in writing.
 

 (2) Until the assignee of an interest in a limited liability company becomes a member, the assignor shall continue to be a member.
 

 [[Image here]]
 

 La. R.S. 12:1333. Powers of estate of a deceased or incompetent member.
 

 If a member who is an individual dies or a court of competent jurisdiction adjudges him to be incompetent to manage his person or his property, the member’s membership ceases and the member’s executor, administrator, guardian, conservator, or other legal representative shall be treated as an assignee of such member’s interest in the limited liability company....
 

 Professor Kalinka identifies these changes in a member’s relationship to the limited liability company caused by assignment or death as dissociation events. Susan Kalinka,
 
 Dissociation of a Member from a Louisiana Limited Liability Company: The Need for Reform,
 
 66 La.L.Rev. 365 (2006). She notes that the dissociation statutes for the limited liability company respect “the principle of
 
 delectus personae,
 
 that partners have the right to choose their associates.”
 
 Id.
 
 at 370.
 

 Thus, while we do not find any intention of the seven (non-Grosjean) founding members of the LLC to end the ownership rights of Lola in the ^conversion of the Partnership into the LLC, the documentation for the LLC clearly shows that Robert was the named member for that interest. The appellants are correct that Lola was never included as a member of the LLC. However, under these unique circumstances, we find that the formation of the LLC could occur with Robert’s representation as the named LLC member of the family’s co-owned interest in the former partnership. The result (as though Lola and her children were treated as assignees of this interest in the LLC) is not prohibited under the Louisiana limited liability company law as shown by the above provisions concerning the assignment of a member’s interest in a limited liability company. Accordingly, while we affirm the trial court’s recognition of Lola’s and her family’s ownership of the LLC interest, we amend the judgment to reflect that the voting member of the LLC for the Grosjean family interest is Robert.
 
 [8]
 
 Such amendment also resolves
 
 *248
 
 any claim of Robert and Contractors, Inc. for recovery of assessments paid to the LLC subsequent to Robert’s purchase in 2005 of Contractors, Inc. from his mother.
 
 [9]
 

 Finally, we further reject Robert and Contractors, Inc.’s arguments that the disputed interest was acknowledged by Lola in 2005 as an asset of Contractors, Inc., so that any claim to that interest was sold to Robert and his sister, Vickie Cox, as a part of Lola’s stock sale of the company. At the 12(jtime of that transaction, the 2004 balance sheet for Contractors, Inc. did list in its assets as “Investment — Palmetto” an asset entry with a $376,400 value. Robert claims that this entry was for all three of the family’s memberships in the LLC. On the records of the LLC, those memberships stood in the names of Robert, Contractors, Inc. and GG & C. In May 2005, preceding Lola’s sale of her ownership of the business, the membership of Contractors, Inc. was sold for $125,000 and the sale proceeds were used by Contractors, Inc. to have a bank CD in Lola’s name freed as a security pledge for the business. Before this suit, in 2007, the GG & C membership in the LLC was sold to a third party. The proceeds of that sale did not go to Contractors, Inc., but to the three family members who owned GG & C. The membership standing in the name of Robert was never changed in the records of the LLC to reflect its ownership in Contractors, Inc. Last, the testimony of Lola and Ronald Cox, whose wife, Vickie, was also purchasing her mother’s stock, does not reflect that the evaluation of the company’s assets for the sale price to Lola specifically included the value of the membership which was originally purchased by Victor.
 

 The trial court’s ruling was that two of the three family memberships in the LLC were included as assets only for the enhancement of the value of Lola’s closely held company for the company’s bonding capacity. Such commingling of assets did not represent a transfer to Contractors, Inc. of either the former Victor Grosjean membership in Palmetto Farms or the GG
 
 &
 
 C membership. Our review of the record supports that conclusion and Lithe conclusion that Lola did not sell the disputed membership as a part of her stock sale of the business.
 

 Conclusion
 

 Based upon the above reasoning, the judgment of the trial court recognizing the ownership of Lola and her children of the disputed interest in the LLC is amended to recognize that Robert remains as the member of the LLC with the economic rights in the LLC being owned by Lola and her children in the manner set forth in the judgment. As amended, the judgment is affirmed. Costs of appeal are assessed to Robert E. Grosjean and Grosjean Contractors, Inc.
 

 JUDGMENT AMENDED AND, AS AMENDED, AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before BROWN, WILLIAMS, STEWART, GASKINS and CARAWAY, JJ.
 

 Rehearing denied.
 

 [1]
 

 . Grosjean Contractors, Inc. is the successor name for Grosjean Roofing and Sheet Metal Contractors, Inc.
 

 [2]
 

 . There is some dispute as to whether Victor E. Grosjean conveyed twenty percent (20%) of the corporate shares in Contractors, Inc. to Robert prior to his death. Nevertheless, Lola was the controlling shareholder of the corporation following her husband’s death.
 

 [3]
 

 . It is unclear who the designated members of the Victor Grosjean and the Contractors, Inc.'s interests were at the time of the Fourth Amendment’s execution. Victor's signature appears in his representative capacity for both interests.
 

 [4]
 

 . La. C.C. art. 476 states: One may have various rights in things: (1) Ownership; (2) Personal and predial servitudes; and (3) Such other real rights as the law allows.
 

 Plaintiff is not asserting a predial servitude or a real right, as those rights do not involve incorporeal movables.
 
 See
 
 La. C.C. art. 646 and Official Revision Comment (b), La. C.C. art. 476. While she would have a usufruct over an undivided interest in the incorporeal movable, Robert adversely claims ownership of the entire LLC interest, making "ownership” of the incorporeal movable central to this dispute.
 

 [5]
 

 . Moreover, even if Robert might be considered as having exercised "possession" of these incorporeal movables, his possession against his co-heirs and co-owners could only commence when he demonstrated sufficient overt and unambiguous acts that gave notice to plaintiff. La. C.C. art. 3478.
 

 [6]
 

 . We also note that four of the five children gave testimony at trial which was favorable to Lola’s claims.
 

 [7]
 

 . La. C.C. art. 2352 provides, in pertinent part, as follows:
 

 A spouse who is a partner has the exclusive right to manage, alienate, encumber, or lease the partnership interest.
 

 [8]
 

 . None of the parties presented into evidence any operating agreement for the LLC which might address further an interest owned in the LLC in the manner now determined by this judgment. However, the statutory protection afforded assignees of an interest in a
 
 *248
 
 limited liability company under La. R.S. 12:1330(A) should now apply to Lola's interest.
 

 [9]
 

 . Moreover, the record does not specifically identify the amount of assessments from the LLC or payments on the debts of the LLC by Robert or Contractors, Inc. after Lola's sale of the business in 2005.