STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-588

LOWELL EBERT AND SUZETTE REEVES EBERT

VERSUS

GARY HOWELL

Consolidated with 23-589

GARY HOWELL

VERSUS

SUZETTE REEVES AND LOWELL EBERT

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 93,852
(consolidated with 93,899)
HONORABLE DESIREE D. DYESS, DISTRICT JUDGE

**********

CHARLES G. FITZGERALD
JUDGE

**********

Court composed of Van H. Kyzar, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

AFFIRMED.

Kyzar, Judge, concurs and assigns reasons.

**T. Taylor Townsend**
**Shantel M. Wempren**
**T. Taylor Townsend, LLC**
**Post Office Box 784**
**Natchitoches, Louisiana 71458**
**(318) 238-3612**
**Counsel for Plaintiffs/Appellants:**
  **Lowell Ebert**
  **Suzette Reeves Ebert**

**Christopher M. Sylvia**
**720 San Antonio Avenue**
**Many, Louisiana 71449**
**(318) 431-5009**
**Counsel for Defendant/Appellee:**
  **Gary Howell**

**FITZGERALD, Judge.**

This appeal stems from the trial court's judgment denying the plaintiffs' claims for declaratory relief and specific enforcement of an option to purchase immovable property.

## FACTS AND PROCEDURAL HISTORY

On April 15, 2019, the plaintiffs, Lowell Ebert and Suzette Reeves Ebert, and the defendant, Gary Howell, executed in authentic form a lease agreement with an option to purchase immovable property. Howell was the owner/lessor, and the Eberts were the tenant/lessees. Howell and the Eberts were close friends when the agreement was signed.

In relevant part, the lease provided for a two-year initial term, running from April 15, 2019, through March 14, 2021, with monthly rental payments in the amount of $2,726.85. The lease also contained an option for the Eberts to purchase the property "at any time throughout the initial term of the foregoing lease" for $429,000.00.

It is undisputed that the leased property would be used as a bed and breakfast. It is also undisputed that during the lease's initial term, the parties orally modified the agreement on at least two occasions: first, for the payment of property taxes; and second, for the payment of flood insurance premiums. In addition, it is undisputed that the Eberts continued to reside in the bed and breakfast for approximately twenty-four months after the March 14, 2021 termination date, and that they continued paying monthly rent until December 2022 when Howell refused to deposit those funds. The relationship between the parties soured over time, culminating in a dispute as to their rights and obligations under the option to purchase.

Then, on March 8, 2023, the Eberts filed a Petition for Declaratory Judgment and to Enforce Option to Purchase. A few weeks later, Howell responded by filing

a motion to evict the Eberts from the leased premises. All actions were tried together by agreement on May 18, 2023. At the close of evidence, the trial court took the matter under advisement. Thereafter, on July 12, 2023, the trial court issued written reasons and a final judgment. In essence, the trial court denied the Eberts' actions for declaratory relief and specific performance but granted Howell's motion for eviction. The judgment was amended on September 29, 2023. This appeal by the Eberts followed.[1]

On appeal, the Eberts assert the following assignments of error:

1.    The Court erred in finding that the Lease with Option to Purchase expired on March 20, 2021[,] and was reconducted after the initial term by operation of law.

2.    The Trial Court erred by not finding that the Lease with Option to Purchase was validly extended by oral agreement of the parties in March 2021 during the initial term.

## LAW AND DISCUSSION

A trial court's factual findings are reviewed on appeal for manifest error. *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). On the other hand, pure legal questions are reviewed de novo. *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731. Because both assignments of error concern the existence of an oral agreement to extend the lease, we address them together in the discussion below.

On appeal, the Eberts frame the issue before us as follows: "The primary issue before the court is whether the Lease with Option to Purchase was extended by oral agreement of the parties." The Eberts argue that the parties verbally agreed to extend the lease during the initial term, and that this verbal agreement had the effect of

---

[1] The Eberts' petition for declaratory judgment and specific performance was filed in trial court docket number 93,852, and the appeal of that matter was lodged in appellate docket number 23-588. On the other hand, Howell's motion for eviction was filed in trial court docket number 93,899, and the appeal of that matter was designated as appellate docket number 23-589. Both appeals have been consolidated by previous order of this court.

extending the option to purchase. Howell disagrees, arguing that no such agreement was reached during the lease's initial term.

On this issue, the trial court made the following finding of fact, as noted in its written reasons:

> The parties entered into "oral modifications" that included that the Eberts pay the property taxes and, most importantly, about July of 2021, after the original lease term expired, to continue the lease to "through COVID-19" as COVID-19 severely impacted the Eberts' use of the property as a commercial Air B & B establishment.

Thus, according to the trial court, "[w]hen the Eberts continued to occupy the house a week after the term expired, i.e., March 20, 2021, it became a month-to-month lease by operation of law." *Id*. (citing La.Civ.Code arts. 2721 and 2723).

As the trial court put it:

[U]pon reconduction of the subject lease on March 20, 2021, the Eberts' tenancy converted to a month to month basis *without* a definite term, therefore, the Eberts' unexercised option to purchase terminated.

> The Eberts argue that the parties "modified" the original lease when they agreed to continue it "through COVID-19," thus reviving the option to purchase. This court demurs. The initial lease agreement terminated and a month-to-month reconductive lease began in mid-March of 2021. The discussion between Ms. Ebert and Mr. Howell to "modify" the contract "through COVID-19" came too little too late. The initial term of the original lease agreement had already expired, and any oral modification of the reconductive lease could neither revive the option to purchase past the initial term as described above nor confect a new option to purchase finding that there was no meeting of the minds as to price as commanded by La.Civ.Code art. 2620 as Mr. Howell demanded the new appraisal price of $455,000.00 to be the purchase price which the Eberts now object. Lastly, it is uncontested that the oral modification claimed by the Eberts was not subsequently reduced to writing pursuant to La.Civ.Code arts. 2440 and 1839 thus failing to "meet the formal requirements of the sale it contemplates" pursuant to Article 2620.

*Id*. (footnote omitted).

In short, the above finding of fact—that the parties extended the lease by oral agreement in July 2021, which was after the initial term of the lease had expired—is not manifestly erroneous: that finding is reasonably supported by the record. But

3

that finding has no bearing on the enforceability of the option to purchase. Why? Well, for starters, a lease and an option to buy or sell are separate and distinct contracts.

In relevant part, La.Civ.Code art. 2668 defines a lease as "a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay." Louisiana Civil Code Article 2681 then addresses the form requirements for a lease, stating in part that "[a] lease may be made orally or in writing."

On the other hand, La.Civ.Code art. 2620 defines an option to buy or sell as "a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time. An option must set forth the thing and the price, and meet the formal requirements of the sale it contemplates." Hence, an option to buy or sell immovable property must be in writing and executed by authentic act or act under private signature. La.Civ.Code art. 2440.

In addition, "a contract that is not required by law to be in writing may be modified by a subsequent oral agreement[.]" *Schindler Elevator Corp. v. Long Prop. Holdings, L.L.C.*, 50,199, p. 12 (La.App. 2 Cir. 11/18/15), 182 So.3d 233, 241. By way of example, a lease of immovable property that is reduced to writing can be modified by a subsequent oral agreement. By contrast, an option to buy or sell immovable property—for which the law requires written form—can only be modified by subsequent written agreement. *Hoth v. Schmidt*, 220 La. 249, 56 So.2d 412 (La.1951).

In *Hoth*, the Louisiana Supreme Court reiterated this statement of law, explaining that an "option to sell real estate is not valid unless given in writing.

4

Consequently, *an extension of the time stipulated in a written promise or option to buy or sell real estate must be in writing.*" *Id*. at 412 (emphasis added).

Here, the Eberts failed to secure an extension of the option in writing. This failure is fatal to their appeal. Whether there was an oral agreement to extend the lease is immaterial. The Eberts' assignments of error are therefore without merit.[2]

## DISPOSITION

The trial court judgment of July 12, 2023, as amended on September 29, 2023, is affirmed. The costs of this appeal are assessed to Lowell Ebert and Suzette Reeves Ebert.

**AFFIRMED.**

---

[2] The Eberts cite a handful of cases that have approved oral extensions of options to buy or sell immovable property. But those cases involved equitable claims, such as detrimental reliance, unjust enrichment, and equitable estoppel. And none of those claims are before us.

LOWELL EBERT AND SUZETTE REEVES EBERT

VERSUS

GARY HOWELL

**KYZAR, J., concurring with additional reasons.**

While I concur in the result reached by the majority, and the reasons set forth, I write separately to address a line of cases relied upon by the trial court in reaching the decision being affirmed by the majority opinion. In its combined judgment and reasons for judgment, the trial court stated as follows:

> Generally, unexercised option rights, including the right to purchase, terminate with the original lease and are not carried over when a lease is a reconducted. *Davis v Elmer*, App. 1 Cir.2015, 166 So.3d 1082, 2014-1298 (La.App. 1 Cir. 3/12/15).
>
> Here, the subject lease was offered into evidence as proof of the agreement between the parties, and as such, it is valid and enforceable. It provides for a term of two years, from April 15, 2019 until March 14, 2021. When the Eberts continued to occupy the house a week after the term expired, *i.e.*, March 20, 2021, it became a month-to-month lease by operation of law. "A lease with a fixed term is reconducted if, after the expiration of the term, and without notice to vacate or terminate or other opposition by the lessor or the lessee, the lessee remains in possession ... (2) For one week in the case of other leases with a fixed term that is longer than a week[.]" La.Civ.Code art. 2721. Also, "[t]he term of a reconducted nonagricultural lease is: (1) From month to month in the case of a lease whose term is a month or longer[.]" La.Civ.Code art. 2723. However, a reconductive [sic] lease, does not include an onerous provision such as an option to purchase for once the original lease is terminated, all unexercised option rights are extinguished. *Landau v. Groves*, 397 So.2d 866 (La.App. 4 Cir. 1981), *Snedegar v. Noel Estate, Inc.*, 438 So.2d 677 (La.App. 2 Cir.1983), *writ denied*, 442 So.2d 459 (La.1983), *Williams v. Bass*, 37,156 (La.App. 2 Cir. 5/14/03), 847 So.2d 80, 83; *Davis v. Elmer*, 2014-1298 (La.App. 1 Cir. 3/12/15), 166 So.3d 1082, 1086. In other words, once the original lease is terminated, as with reconduction, all unexercised option rights are likewise terminated. This is so because the lease and option to purchase are a part of the same *initial* contract

and are inseparable. *Amand v Zerangue*, 389 So.2d 804 (La.App. 3 Cir. 1980); *Smith Enterprises, Inc. v Borne*, 245 So.2d 9 (La.App. 1 Cir. 1971). It follows that the existence of the option rights are dependent upon the original lease being in full force and in effect at the time they are sought to be exercised. Additionally, an option agreement which is part of a lease having a *definite term* (as in the instant case), is necessarily limited to the term of the lease. *Snedegar v. Noel Estate, Inc.*, 438 So.2d 677 (La.App. 2 Cir.1983), *writ denied*, 442 So.2d 459 (La.1983). Therefore, upon reconduction of the subject lease on March 20, 2021, the Eberts' tenancy converted to a month to month basis *without* a definite term, therefore, the Eberts' unexercised option to purchase terminated.

The Eberts argue that the parties "modified" the original lease when they agreed to continue it "through COVID-19," thus reviving the option to purchase. This court demurs. The initial lease agreement terminated and a month-to-month reconductive [sic] lease began in mid-March of 2021. The discussion between Ms. Ebert and Mr. Howell to "modify" the contract "through COVID-19" came too little too late.

While the cited case law seems to support the legal conclusion that the option to purchase terminated solely because of the expiration of the initial term of the original written lease, and would in no event survive a reconduction of the lease, a deep dive into the substance of these cases reveals the flaw in that rationale.

The trial court, in its reasons for judgment, cites *Davis v. Elmer*, 14-1298 (La.App. 1 Cir. 3/12/15), 166 So.3d 1082, as support for the proposition that an option to purchase within a lease does not survive the initial lease term, even if the lease is reconducted. That was not an issue in *Davis*, and any mention thereof is dicta at best.

The opinion in *Davis* cites *Williams v. Bass*, 37,156 (La.App. 2 Cir. 5/14/03), 847 So.2d 80, 83, for the proposition that "[g]enerally, unexercised option rights, including the right to purchase, terminate with the original lease and are not carried over when a lease is a [sic] reconducted." *Id.* at 1085 n.4. However, a reading of *Williams* shows that it was solely an eviction case, where no option was at issue and any mention thereof was also dicta, as a discussion of option rights was not

2

germane to the result. In *Williams*, the second circuit, citing *Roussel v. Dalche*, 158 La. 742, 104 So. 637 (1925), correctly held that the summary proceeding for eviction involved the single issue of whether the owner was entitled to possession of the premises. An occupant cannot defeat an owner's "right to summary action for eviction by injecting therein issues foreign to the one issue involved, and thereby, converting the summary proceeding into an ordinary proceeding." *Vicknair v. Watson-Pitchford, Inc.*, 348 So.2d 695, 696 (La.App. 1 Cir. 1977). The only issue in *Williams* was whether the rent was paid, and the issue of an option was only interjected following the hearing on the eviction. Thus, the option issue could not be considered, and any pontification about an option expiring with the term of the original lease was simply dicta, as it was in *Davis*.

The opinion in *Williams* then cites *Landau v. Groves*, 397 So.2d 866 (La.App. 4 Cir. 1981), as further support for the proposition that the expiration of the initial term of a lease containing an option to purchase cancels the option as a matter of law, apparently without regard to the language of the option agreement itself. However, *Landau* is not on point either and does not stand for the proposition for which it is cited. There, the eviction had already occurred for non-payment of the lease rentals before the tenants attempted to exercise the option. So naturally, the option terminated when the lease was terminated by eviction. The court in *Landau* held:

> The lease and option to purchase are a part of the same contract and are inseparable. It therefore follows that the existence of the option rights are dependent upon the lease being in full force and in effect at the time they are sought to be exercised. Once the lease is terminated, as in this instance by eviction, all unexercised option rights are extinguished.

> We conclude that if the Landaus desired to preserve their option rights under the lease they would have had to perfect a devolutive appeal to prevent its cancellation becoming finally adjudicated. This they failed to do. Reaching this result we obviate the need to consider

3

the effect of nonpayment or tender of performance by plaintiffs on the option clause until after the landlord filed the rule for eviction.

*Id.* at 868 (footnote omitted).

*Williams* also cites *Smith Enterprises, Inc. v. Borne*, 245 So.2d 9 (La.App. 1 Cir.), *writ refused*, 258 La. 574, 247 So.2d 393 (1971), but it, likewise, does not support the proposition that simply because the initial term of the original lease has expired, the options to purchase contained therein have also expired. In *Smith*, the plaintiff attempted to exercise an option to purchase contained in the lease agreement during the term of the lease. The holding in *Smith*, 245 So.2d at 11, supports the opposite: "We are also of the opinion that the lease and option to purchase, being part of the same agreement, are inseparable and that, so long as the lease is in full force and effect, so must be the option." The court found that the plaintiff was entitled to specific performance of the option to purchase.

Finally, we reach the source case cited for the proposition that an option to purchase within a lease expires automatically with the expiration of the initial term of the lease, *Kinberger v. Drouet*, 149 La. 986, 989, 90 So. 367, 368 (1922). However, a clear reading of the opinion establishes that *Kineberger* contains no such pronouncement of law. There, the plaintiff attempted to exercise an option to purchase that was contained within a lease with a five-year term, by notifying the defendant lessor in writing that he desired to execute the option and purchase the property at the agreed upon price of $50.00 per acre cash. The defendant refused to accept the attempt to exercise the option. The supreme court held in favor of the plaintiff, finding the option, which had no independent term but was within the lease, which itself had a five-year term, was valid and enforceable. As held by the court, "This option was expressly accepted by plaintiff by authentic act, duly recorded in the parish of Rapides on November 26, 1917, or over 30 days before

4

the term fixed for its expiration, December 31, 1917." *Id.* at 371–72. The lease with option to purchase was valid for five years, and the plaintiff attempted to exercise the option within that time period. The case did not involve a reconducted lease, and nowhere therein does the supreme court hold that an option to purchase expires as a matter of law when the initial term of the lease expires.

Certainly, if a lease and an included option to purchase are co-terminus, the expiration of the lease coincides with the termination of the option. However, if the option to purchase is valid for the life of the lease, and the lease is still valid because of reconduction, the option to purchase is still a valid, exercisable option.

The interpretation of law as espoused in *Davis* and the cases cited therein that also appear on the surface to support that interpretation, i.e., that an option to purchase expires simply because of the expiration of the initial term of a lease, is flawed at the least and entirely wrong at best.

Having so stated, I agree with the outcome reached by the majority, as I also agree with the outcome reached by the trial court, but I do so by applying the tried-and-true rule of law as to the interpretation of contracts in general. Louisiana Civil Code Article 2046 provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." The lease in question states, as to the option to purchase, that the "Tenant may exercise this Option by giving Landlord notice at any time throughout the *initial term* of the foregoing lease (*the 'Option Term'*)." (Emphasis added.) This provision is clear and unambiguous. The option expired at the end of the initial term of the lease on March 14, 2021. It is undisputed that the Ebert's did not attempt to exercise the option until 2022. By that time, the option had expired by its own terms, although the lease itself was still in force and effect by reconduction.

5

Contrary to *Davis* and the other cases discussed, had the option here simply stated that the tenant may exercise the option by giving the landlord notice at any time throughout the existence or the term of the lease, it would have remained valid and exercisable when the term of the lease was extended to a month to month basis through reconduction. It is solely the use of the words "initial term" in the option contract at hand that doomed the Eberts' ability to exercise the option when they attempted to do so.